ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNICO SERVICES INC. f/k/a Unico Replacement Parts, Inc.<br><br>Plaintiff,<br><br>THE UNITED STATES OF AMERICA<br><br>Defendant. | Case No. 05-955T |

FILED
AUG 30 2005
U.S. COURT OF FEDERAL CLAIMS

## COMPLAINT

COMES NOW, Unico Services Inc., f/k/a Unico Replacement Parts Inc., Plaintiff, pursuant to Court of Federal Claims Rule 3, and alleges to the Honorable Judges of the United States Court of Federal Claims as follows:

1. Plaintiff is a corporation with a business location in Benicia, California and mailing address of P.O. Box 887, 94510-0887. Plaintiff's Employee Identification Number is 95-2885601.

2. Defendant is the United States of America.

3. This is an action for refund of Federal employment taxes, penalties, and interest founded upon the Internal Revenue Code, erroneously assessed and collected by Defendant. This Court has jurisdiction for refund actions pursuant to 28 U.S.C. §§ 6511 and 7422.

4. The recovery of monies and refund of taxes, penalties, and interest relates to the Federal employment tax returns of Plaintiff, Forms 941, for the tax periods ended June 30, 2000, September 31, 2000, December 31, 2000, and September 30, 2001. Such tax returns were timely filed by Plaintiff with the Internal Revenue Service.

5. By coercive collection actions including liens, levies, and other collection actions, Defendant caused Plaintiff to involuntarily pay the full amount of tax erroneously alleged by Defendant for the tax periods ended June 30, 2000, September 31, 2000, December 31, 2000, and September 30, 2001.

6. The doctrines of collateral estoppel and *res judicata* will also cause the decision of the Court in the case at hand to satisfy identical issues arising with respect to the Federal employment tax returns of Plaintiff, Forms 941, for the tax periods ended March 31, 2001, June 30, 2001, and December 31, 2001. Such tax returns were timely filed by Plaintiff with the Internal Revenue Service.

7. On August 10, 2004, Defendant issued an Employment Tax Examination Changes Report determining a deficiency in employment tax and penalty for the tax periods ended June 30, 2000, September 30, 2000, and December 31, 2000 in the amounts set forth below.

| Taxable Year Ended | Deficiency | Penalty §6662(a) | Penalty § 6656 |
|---|---|---|---|
| June 30, 2000 | $ 71,248.80 | $ 14,249.76 | $ 762.44 |
| September 30, 2000 | $ 61,800.00 | $ 12,360.00 | $ 290.00 |
| December 31, 2000 | $ 40,788.00 | $ 8,157.60 | $ 191.40 |

8. On February 1, 2005, Defendant issued an Employment Tax Examination Changes Report determining a deficiency in employment tax and penalty for the tax periods ended June 30, 2001, September 30, 2001, and December 31, 2001 in the amounts set forth below.

| Taxable Year Ended | Deficiency | Penalty §6662(a) | Penalty § 6656 |
|---|---|---|---|
| June 30, 2001 | $210,819.60 | $ 42,163.92 | $ 1,440.98 |
| September 30, 2001 | $ 3,690.88 | $ 814.63 | $ 19.11 |
| December 31, 2001 | $68,750.00 | $ 15,200.00 | $ 362.50 |

9. Defendant placed liens on all property of the Plaintiff.

10. On April 12, 2005, Defendant levied upon a portion of a payment due to Plaintiff from a Federal administrative agency and collected $4,689.88, which Defendant applied to the period ending June 30, 2000.

11. On or around June 14, 2005, Defendant levied on the operating bank account of Plaintiff and collected the remaining amount of assessed tax and penalties for the relevant periods as set forth at paragraph #7, plus interest, in the amount of $288,808.17.

12. Plaintiff paid the full amount of tax deficiency assessed by Defendant for the period ending September 30, 2001, plus an additional amount, the total being equal to $4,073.15.

13. Claims for employment tax refund, Forms 843, were filed within two years of the payments of tax set forth in paragraphs #10, #11, and #12.

14. Plaintiff filed Forms 843, "Claim for Refund and Request for Abatement" with the Internal Revenue Service claiming refunds in the amounts of $122,778.75, $103,677.03, $67,042.27, $4,073.15 for the periods ending June 30, 2000, September 30, 2000, December 31, 2000, and September 30, 2001, respectively, for reasons identically stated in this Complaint. Complete copies of these claims for refund are attached to this Complaint.

15. In letters dated August 22, 2005, the Internal Revenue Service informed Plaintiff that the Internal Revenue Service had disallowed in full the claims for refund for the periods ending June 30, 2000, September 30, 2000, December 31, 2000, and September 30, 2001. On

August 25, 2005, Plaintiff delivered executed Forms 3363, "Acceptance of Proposed Disallowance of Claim for Refund or Credit," to the Internal Revenue Service for each period.

16. D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries.

17. During the tax year ended December 31, 1998, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part.

18. Pixley Services Limited transferred certain rights to the employment services of D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee leasing and employee temporary services.

19. D. Gordon Potter became an employee of Release Me, Inc. during the tax year ended December 31, 1998.

20. Release Me, Inc. contracted with Plaintiff to provide skilled labor.

21. On April 15, 2000, Release Me, Inc. assigned (1) its rights to employment services of D. Gordon Potter and (2) its rights under the skilled labor contract with Plaintiff, discussed at paragraph #20, to Fair Skys Corp, a company engaged in the business of employee leasing and employee temporary services.

22. On April 15, 2000, D. Gordon Potter became an employee of Fair Skys Corp.

23. Pursuant to this contractual relationship with Pixley Services Limited, Fair Skys Corp. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter during the periods at issue.

24. As part of the contract between Plaintiff and Fair Skys Corp., Fair Skys Corp. provided the services of D. Gordon Potter.

25. While providing services to Plaintiff, D. Gordon Potter worked on multiple business projects.

26. Plaintiff made periodic payments to Fair Skys Corp., pursuant to the skilled labor contract discussed above at #20.

27. Fair Skys Corp., in turn, paid substantial wages to D. Gordon Potter pursuant to D. Gordon Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Fair Skys Corp. Fair Skys Corp. paid employment tax on the wages paid to D. Gordon Potter.

28. D. Gordon Potter included these wages in income and paid tax, accordingly.

29. Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley Services Limited established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter.

30. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non-vested, retirement plan is a

non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan.

31. The contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter constitutes deferred compensation, which is not includable in income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter pursuant to the plain language of I.R.C. §§ 83, 451.

32. In the Employment Tax Examination Changes Reports discussed above at paragraphs #7 and #8, Defendant erroneously determined that Plaintiff paid additional compensation to D. Gordon Potter by determining that D. Gordon Potter's employment relationship with Fair Skys Corp. violates the "economic substance doctrine," as described by this Court in Coltec Industries, Inc. v. United States, 62 Fed. Cl. 716 (2004) (No. 01-072T).

33. In the Employment Tax Examination Changes Reports discussed above at paragraphs #7 and #8, Defendant erroneously determined that D. Gordon Potter is an employee of Plaintiff during the periods at issue and assessed Plaintiff for employment tax on the amounts that Plaintiff paid to Fair Skys Corp., less the amounts paid by Fair Skys Corp. to D. Gordon Potter and reported as wages, pursuant to the skilled labor contact discussed at paragraph #20.

34. D. Gordon Potter's employment relationship with Fair Skys Corp. and the contracting of employment rights satisfies all statutory requirements under the Internal Revenue Code, as established by Congress. At no time has Defendant determined that the employment relationships specifically violated any state or Federal statute.

35. In 1978, Congress, in passing I.R.C. § 132, prohibited Defendant from promulgating regulations concerning the employment relationships at issue in this case.

36. In 2004, Congress passed legislation concerning the taxability of nonqualified deferred compensation plans of the type at issue in this case. Although aware of the types of transactions at issue, Congress expressly and specifically made the new legislation prospective only, such that it does not effect the transactions at issue in this case. Because no statutory authority exists for the periods at issue to assess a deficiency and exact monies from Plaintiff, Defendant relies exclusively, in its Employment Tax Examination Changes Reports discussed above at paragraphs #7 and #8, on the "economic substance" theory that was rejected by this Court in Coltec Industries, Inc. v. United States, 62 Fed. Cl. 716 (2004) (No. 01-072T).

37. Defendant's assessment and concomitant collection of monies from Plaintiff under the guise of the "economic substance doctrine" violates the time-tested separation of powers and the ex-post facto prohibitions of the Constitution. This conclusion is adopted by this Court in Coltec Industries, Inc. v. United States, 62 Fed. Cl. 716 (2004) (No. 01-072T).

COUNT I

38. Paragraphs 1 through 37 are incorporated herein by this reference.

39. The form of the arrangement between D. Gordon Potter, Pixley Services Limited, and Fair Skys Corp. reflects the substance of that arrangement. D. Gordon Potter is not an employee of Plaintiff during the periods at issue.

40. The arrangement is not a series of predetermined interrelated steps in a single transaction focused on a goal of Plaintiff establishing and funding a non-qualified deferred compensation plan, arrangement, or agreement for the benefit of D. Gordon Potter.

41. The arrangement does not lack economic substance.

42. The amounts paid by Plaintiff to Fair Skys Corp., above the amounts paid by Fair Skys Corp. to D. Gordon Potter and reported as wages, was neither constructively received by

D. Gordon Potter nor taxable to D. Gordon Potter under I.R.C. §§ 83(a) and/or 402(b) as property transferred from Plaintiff in connection with the performance of services by D. Gordon Potter.

43. The arrangement satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Pursuant to Coltec Industries, Inc. v. United States, 62 Fed. Cl. 716 (2004) (No. 01-072T), the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

WHEREFORE, Plaintiff prays for judgment against the United States on the facts and the law in the sum of $297,571.20, representing a refund for Federal employment tax, penalties, and interest erroneously collected, plus statutory interest thereon as provided by law, other applicable interest and such other and further relief, including reimbursement of attorneys fees and other costs, as may be just and proper. In the alternative,

COUNT II

44. Paragraphs 1 through 37 are incorporated herein by this reference.

45. If this Court ultimately concludes that Plaintiff is not entitled to a refund of the tax in the case at hand, Plaintiff is still entitled to recover amounts erroneously collected as penalties.

46. As set forth above, the plain language of the statutes and published case law supports the return reporting position of Plaintiff. The issues in this case represent a previously untested, complicated area of the tax law that is subject to multiple reasonable interpretations.

47. Plaintiff relied upon the advice of competent accountants and attorneys, and, therefore, satisfies the reasonable cause exception to the application of penalties.

WHEREFORE, Plaintiff prays for judgment against the United States on the facts and the law with regard to the amounts collected for penalties and interest thereon representing a refund for Federal penalties and interest erroneously collected, plus statutory interest thereon as provided by law, other applicable interest and such other and further relief, including reimbursement of attorneys fees and other costs, as may be just and proper.

RESPECTFULLY SUBMITTED,

Date: 8-25-05

By Robert J. Stientjes

Counsel for Plaintiff

**Gasaway & Stientjes LLP**

Robert J. Stientjes
41 S. Old Orchard Ave., Ste. B
Saint Louis, Missouri 63119
(314) 961-3812 telephone
(314) 918-7120 facsimile

Form **843** (Rev. November 2002)
Department of the Treasury
Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves (a) one of the taxes shown on line 3a or (b) a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant: UNICO SERVICES INC. | Your SSN or ITIN |
| Address (number, street, and room or suite no.): PO BOX 887 | Spouse's SSN or ITIN |
| City or town, state, and ZIP code: BENICIA, CA 94510-0887 | Employer identification number (EIN): 95 : 2885601 |
| Name and address shown on return if different from above | Daytime telephone number ( ) |

1 Period. Prepare a separate Form 843 for each tax period
From 04 / 01 / 2000 to 06 / 30 / 2000

2 Amount to be refunded or abated $ 122,778.75

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☐ Penalty—IRC section ▶

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

SEE ATTACHED RIDER

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

D Gordon Potter, Vice President — 7-23-05
Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Date

Signature — Date

D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries. During the year at issue, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part. Pixley Services Limited transferred certain rights to the employment services of Dean D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee leasing and employee temporary services. Thus, D. Gordon Potter became an employee of Release Me, Inc. during the year at issue. Release Me, Inc. contracted with Unico Services, Inc. to provide skilled labor. Pursuant to this contractual relationship with Pixley Services Limited, Release Me, Inc. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter. As part of the contract between Unico Services, Inc. and Release Me, Inc., Release Me, Inc. provided the services of D. Gordon Potter. While providing services to Unico Services, Inc., D. Gordon Potter worked on multiple business projects.

Unico Services, Inc. made periodic payments to Release Me, Inc., pursuant to the skilled labor contract discussed above, and Release Me, Inc. included these amounts on its income tax return. Release Me, Inc., in turn, paid substantial wages to D. Gordon Potter and paid the employer's portion of the employment tax pursuant to the Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Release Me, Inc. D. Gordon Potter included these wages in income and paid income tax and the employee's portion of the employment tax, accordingly.

Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non-vested, retirement plan is a non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan. Therefore, the contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter constitutes deferred compensation, which is not includable as wages or income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter. *See* I.R.C. §§ 83, 451. Therefore, Unico Services, Inc. is not liable for the employer's portion of employment tax on the amounts paid by Unico Services, Inc. to Release Me, Inc. in excess of the amounts paid by Release Me, Inc. to D. Gordon Potter.

*The Form of the Transaction Must Be Respected*

The Commissioner erroneously asserts that the above transaction lacks economic substance, and the above transaction should be disregarded and re-written for federal tax purposes. The Commissioner, instead of respecting the form, desires to treat the

transaction as a direct employer-employee relationship between D. Gordon Potter and Unico Services, Inc. Thus, the Commissioner alleges that Unico Services, Inc. must pay the employer's portion of employment tax, during the period at issue, on the full amount of payments from Unico Industrial Services, Inc. to the unrelated employee leasing company, Release Me, Inc.

The Commissioner's assertion that the transaction lacks economic substance and should be disregarded and re-written is in direct conflict with relevant case law. In Coltec Industries Inc. v. United States, 62 Fed. Cl. 716 (2004), the Court ruled that a similar arrangement was valid, in which a company transferred contingent liabilities associated with asbestos claims against a subsidiary to an entity the company created and then sold at a loss. In so ruling, the Court stated, "[W]here a taxpayer has satisfied all the statutory requirements established by Congress, as Coltec did in this case, the use of the 'economic substance' doctrine to trump 'mere compliance with the code' would violate the separation of powers…." *See also* TIFD III-E, Inc. v. United States, 342 F. Supp. 94 (D.Conn. 2004).

The transaction set forth above satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Therefore, pursuant to Coltec and TIFD III-E, the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

*Penalties Do Not Apply*

If it is ultimately concluded that Unico Services, Inc. is not entitled to a refund of the tax in the case at hand, penalties do not apply in this case. Where a taxpayer takes a position that has a reasonable basis in law and fact, neither the negligence penalty nor the substantial understatement penalty shall apply. I.R.C. § 6662. Under Treas. Reg. § 1.6662-3(b)(3), a return position is reasonable where based on one or more of the authorities listed in Treas. Reg. § 1.6662-4(d)((3)(iii). As set forth above, the plain language of the statutes and published case law supports the return position of Unico Services, Inc.. The issues in this case represent a previously untested, complicated area of the tax law that is subject to multiple reasonable interpretations. Therefore, no penalties should attach.

Moreover, the reasonable cause and good faith exception in Treas. Reg. § 1.6664-4 may relieve taxpayers from liability from penalties even if the return position does not satisfy the reasonable basis standard. Reasonable cause is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney. United States v. Boyle, 469 U.S. 241 (1985). In the case at hand, taxpayer relied upon the advice of competent accountants and attorneys, and, therefore, satisfies the reasonable cause exception.

For the above stated reasons, Unico Services, Inc. respectfully requests that the Commissioner grant it a refund of taxes paid during the year at issue and reverse the assessment of penalties and interest.

Rider to Form 1040X

Unico Services, Inc.
95-2885601

REQUEST FOR IMMEDIATE REFUND CLAIM DISALLOWANCE

Pursuant to I.R.M. 4.23.13.4 and IRM 4512(2)(g)(Jan. 30, 1987), taxpayer Unico Services, Inc. respectfully requests that the Commissioner immediately disallow this refund claim without administrative consideration. *See* I.R. 1600 (Apr. 26, 1976), 9 Stand. Fed. Tax Rep. (CCH) ¶ 6609 (1976).

In support of this Request for Refund Claim Disallowance, taxpayer submits that the merits of this refund claim have previously been the subject of an administrative examination. Re-evaluation by the Commissioner of this refund claim would be fruitless and serve only to delay commencement of a refund suit by taxpayer.

This Request for Refund Claim Disallowance is for the employer's portion of employment taxes for the period ending June 30, 2000. The amount of this refund claim is equal to $122,778.75.

Taxpayer agrees that the Commissioner's granting of this Request for Refund Claim Disallowance and issuance of a Certified Notice of Claim Disallowance will commence the running of the two-year period of limitations for filing a refund suit pursuant to Proc. & Admin. Reg. § 301.6532-1(c).

WHEREFORE, taxpayer respectfully requests that the Commissioner immediately issue a Certified Notice of Claim Disallowance on an expedited basis disallowing the full amount, $122,778.75, of this refund claim.

Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

OMB No. 1545-0024

▶ See separate instructions.

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

Name of claimant: UNICO SERVICES INC.

Your SSN or ITIN:

Address (number, street, and room or suite no.): PO BOX 887

Spouse's SSN or ITIN:

City or town, state, and ZIP code: BENICIA, CA 94510-0887

Employer identification number (EIN): 95 : 2885601

Name and address shown on return if different from above

Daytime telephone number ( )

1 Period. Prepare a separate Form 843 for each tax period
From 06 / 30 / 2000 to 09 / 30 / 2000

2 Amount to be refunded or abated $ 103,677.03

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☐ Penalty—IRC section ▶

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

SEE ATTACHED RIDER

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

D Gordon Dotton, Vice President — Date: 7-23-05

Signature (Title, if applicable. Claims by corporations must be signed by an officer.)

Signature — Date

D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries. During the year at issue, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part. Pixley Services Limited transferred certain rights to the employment services of Dean D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee leasing and employee temporary services. Thus, D. Gordon Potter became an employee of Release Me, Inc. during the year at issue. Release Me, Inc. contracted with Unico Services, Inc. to provide skilled labor. Pursuant to this contractual relationship with Pixley Services Limited, Release Me, Inc. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter. As part of the contract between Unico Services, Inc. and Release Me, Inc., Release Me, Inc. provided the services of D. Gordon Potter. While providing services to Unico Services, Inc., D. Gordon Potter worked on multiple business projects.

Unico Services, Inc. made periodic payments to Release Me, Inc., pursuant to the skilled labor contract discussed above, and Release Me, Inc. included these amounts on its income tax return. Release Me, Inc., in turn, paid substantial wages to D. Gordon Potter and paid the employer's portion of the employment tax pursuant to the Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Release Me, Inc. D. Gordon Potter included these wages in income and paid income tax and the employee's portion of the employment tax, accordingly.

Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non-vested, retirement plan is a non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan. Therefore, the contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter constitutes deferred compensation, which is not includable as wages or income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter. *See* I.R.C. §§ 83, 451. Therefore, Unico Services, Inc. is not liable for the employer's portion of employment tax on the amounts paid by Unico Services, Inc. to Release Me, Inc. in excess of the amounts paid by Release Me, Inc. to D. Gordon Potter.

*The Form of the Transaction Must Be Respected*

The Commissioner erroneously asserts that the above transaction lacks economic substance, and the above transaction should be disregarded and re-written for federal tax purposes. The Commissioner, instead of respecting the form, desires to treat the

transaction as a direct employer-employee relationship between D. Gordon Potter and Unico Services, Inc. Thus, the Commissioner alleges that Unico Services, Inc. must pay the employer's portion of employment tax, during the period at issue, on the full amount of payments from Unico Industrial Services, Inc. to the unrelated employee leasing company, Release Me, Inc.

The Commissioner's assertion that the transaction lacks economic substance and should be disregarded and re-written is in direct conflict with relevant case law. In Coltec Industries Inc. v. United States, 62 Fed. Cl. 716 (2004), the Court ruled that a similar arrangement was valid, in which a company transferred contingent liabilities associated with asbestos claims against a subsidiary to an entity the company created and then sold at a loss. In so ruling, the Court stated, "[W]here a taxpayer has satisfied all the statutory requirements established by Congress, as Coltec did in this case, the use of the 'economic substance' doctrine to trump 'mere compliance with the code' would violate the separation of powers…." *See also* TIFD III-E, Inc. v. United States, 342 F. Supp. 94 (D.Conn. 2004).

The transaction set forth above satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Therefore, pursuant to Coltec and TIFD III-E, the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

*Penalties Do Not Apply*

If it is ultimately concluded that Unico Services, Inc. is not entitled to a refund of the tax in the case at hand, penalties do not apply in this case. Where a taxpayer takes a position that has a reasonable basis in law and fact, neither the negligence penalty nor the substantial understatement penalty shall apply. I.R.C. § 6662. Under Treas. Reg. § 1.6662-3(b)(3), a return position is reasonable where based on one or more of the authorities listed in Treas. Reg. § 1.6662-4(d)((3)(iii). As set forth above, the plain language of the statutes and published case law supports the return position of Unico Services, Inc.. The issues in this case represent a previously untested, complicated area of the tax law that is subject to multiple reasonable interpretations. Therefore, no penalties should attach.

Moreover, the reasonable cause and good faith exception in Treas. Reg. § 1.6664-4 may relieve taxpayers from liability from penalties even if the return position does not satisfy the reasonable basis standard. Reasonable cause is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney. United States v. Boyle, 469 U.S. 241 (1985). In the case at hand, taxpayer relied upon the advice of competent accountants and attorneys, and, therefore, satisfies the reasonable cause exception.

For the above stated reasons, Unico Services, Inc. respectfully requests that the Commissioner grant it a refund of taxes paid during the year at issue and reverse the assessment of penalties and interest.

Rider to Form 1040X

Unico Services, Inc.
95-2885601

REQUEST FOR IMMEDIATE REFUND CLAIM DISALLOWANCE

Pursuant to I.R.M. 4.23.13.4 and IRM 4512(2)(g)(Jan. 30, 1987), taxpayer Unico Services, Inc. respectfully requests that the Commissioner immediately disallow this refund claim without administrative consideration. *See* I.R. 1600 (Apr. 26, 1976), 9 Stand. Fed. Tax Rep. (CCH) ¶ 6609 (1976).

In support of this Request for Refund Claim Disallowance, taxpayer submits that the merits of this refund claim have previously been the subject of an administrative examination. Re-evaluation by the Commissioner of this refund claim would be fruitless and serve only to delay commencement of a refund suit by taxpayer.

This Request for Refund Claim Disallowance is for the employer's portion of employment taxes for the period ending September 30, 2000. The amount of this refund claim is equal to $103,677.03.

Taxpayer agrees that the Commissioner's granting of this Request for Refund Claim Disallowance and issuance of a Certified Notice of Claim Disallowance will commence the running of the two-year period of limitations for filing a refund suit pursuant to Proc. & Admin. Reg. § 301.6532-1(c).

WHEREFORE, taxpayer respectfully requests that the Commissioner immediately issue a Certified Notice of Claim Disallowance on an expedited basis disallowing the full amount, $103,677.03 of this refund claim.

Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

▶ See separate instructions.

OMB No. 1545-0024

*Use Form 843 only if your claim involves **(a)** one of the taxes shown on line 3a or **(b)** a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not** use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant<br>**UNICO SERVICES INC.** | Your SSN or ITIN |
| Address (number, street, and room or suite no.)<br>**PO BOX 887** | Spouse's SSN or ITIN |
| City or town, state, and ZIP code<br>**BENICIA, CA 94510-0887** | Employer identification number (EIN)<br>**95 : 2885601** |
| Name and address shown on return if different from above | Daytime telephone number<br>( ) |

1 Period. Prepare a separate Form 843 for each tax period
From 09 / 30 / 2000 to 12 / 31 / 2000

2 Amount to be refunded or abated $ 67,042.27

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☐ Penalty—IRC section ▶ ____________

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

SEE ATTACHED RIDER

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

D Gordon Potter Vice President — 7-25-05

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) — Date

Signature — Date

D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries. During the year at issue, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part. Pixley Services Limited transferred certain rights to the employment services of Dean D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee leasing and employee temporary services. Thus, D. Gordon Potter became an employee of Release Me, Inc. during the year at issue. Release Me, Inc. contracted with Unico Services, Inc. to provide skilled labor. Pursuant to this contractual relationship with Pixley Services Limited, Release Me, Inc. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter. As part of the contract between Unico Services, Inc. and Release Me, Inc., Release Me, Inc. provided the services of D. Gordon Potter. While providing services to Unico Services, Inc., D. Gordon Potter worked on multiple business projects.

Unico Services, Inc. made periodic payments to Release Me, Inc., pursuant to the skilled labor contract discussed above, and Release Me, Inc. included these amounts on its income tax return. Release Me, Inc., in turn, paid substantial wages to D. Gordon Potter and paid the employer's portion of the employment tax pursuant to the Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Release Me, Inc. D. Gordon Potter included these wages in income and paid income tax and the employee's portion of the employment tax, accordingly.

Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non vested, retirement plan is a non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan. Therefore, the contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter constitutes deferred compensation, which is not includable as wages or income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter. *See* I.R.C. §§ 83, 451. Therefore, Unico Services, Inc. is not liable for the employer's portion of employment tax on the amounts paid by Unico Services, Inc. to Release Me, Inc. in excess of the amounts paid by Release Me, Inc. to D. Gordon Potter.

*The Form of the Transaction Must Be Respected*

The Commissioner erroneously asserts that the above transaction lacks economic substance, and the above transaction should be disregarded and re-written for federal tax purposes. The Commissioner, instead of respecting the form, desires to treat the

transaction as a direct employer-employee relationship between D. Gordon Potter and Unico Services, Inc. Thus, the Commissioner alleges that Unico Services, Inc. must pay the employer's portion of employment tax, during the period at issue, on the full amount of payments from Unico Industrial Services, Inc. to the unrelated employee leasing company, Release Me, Inc.

The Commissioner's assertion that the transaction lacks economic substance and should be disregarded and re-written is in direct conflict with relevant case law. In Coltec Industries Inc. v. United States, 62 Fed. Cl. 716 (2004), the Court ruled that a similar arrangement was valid, in which a company transferred contingent liabilities associated with asbestos claims against a subsidiary to an entity the company created and then sold at a loss. In so ruling, the Court stated, "[W]here a taxpayer has satisfied all the statutory requirements established by Congress, as Coltec did in this case, the use of the 'economic substance' doctrine to trump 'mere compliance with the code' would violate the separation of powers...." *See also* TIFD III-E, Inc. v. United States, 342 F. Supp. 94 (D.Conn. 2004).

The transaction set forth above satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Therefore, pursuant to Coltec and TIFD III-E, the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

*Penalties Do Not Apply*

If it is ultimately concluded that Unico Services, Inc. is not entitled to a refund of the tax in the case at hand, penalties do not apply in this case. Where a taxpayer takes a position that has a reasonable basis in law and fact, neither the negligence penalty nor the substantial understatement penalty shall apply. I.R.C. § 6662. Under Treas. Reg. § 1.6662-3(b)(3), a return position is reasonable where based on one or more of the authorities listed in Treas. Reg. § 1.6662-4(d)((3)(iii). As set forth above, the plain language of the statutes and published case law supports the return position of Unico Services, Inc.. The issues in this case represent a previously untested, complicated area of the tax law that is subject to multiple reasonable interpretations. Therefore, no penalties should attach.

Moreover, the reasonable cause and good faith exception in Treas. Reg. § 1.6664-4 may relieve taxpayers from liability from penalties even if the return position does not satisfy the reasonable basis standard. Reasonable cause is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney. United States v. Boyle, 469 U.S. 241 (1985). In the case at hand, taxpayer relied upon the advice of competent accountants and attorneys, and, therefore, satisfies the reasonable cause exception.

For the above stated reasons, Unico Services, Inc. respectfully requests that the Commissioner grant it a refund of taxes paid during the year at issue and reverse the assessment of penalties and interest.

Rider to Form 1040X

Unico Services, Inc.
95-2885601

REQUEST FOR IMMEDIATE REFUND CLAIM DISALLOWANCE

Pursuant to I.R.M. 4.23.13.4 and IRM 4512(2)(g)(Jan. 30, 1987), taxpayer Unico Services, Inc. respectfully requests that the Commissioner immediately disallow this refund claim without administrative consideration. *See* I.R. 1600 (Apr. 26, 1976), 9 Stand. Fed. Tax Rep. (CCH) ¶ 6609 (1976).

In support of this Request for Refund Claim Disallowance, taxpayer submits that the merits of this refund claim have previously been the subject of an administrative examination. Re-evaluation by the Commissioner of this refund claim would be fruitless and serve only to delay commencement of a refund suit by taxpayer.

This Request for Refund Claim Disallowance is for the employer's portion of employment taxes for the period ending December 31, 2000. The amount of this refund claim is equal to $67,042.27.

Taxpayer agrees that the Commissioner's granting of this Request for Refund Claim Disallowance and issuance of a Certified Notice of Claim Disallowance will commence the running of the two-year period of limitations for filing a refund suit pursuant to Proc. & Admin. Reg. § 301.6532-1(c).

WHEREFORE, taxpayer respectfully requests that the Commissioner immediately issue a Certified Notice of Claim Disallowance on an expedited basis disallowing the full amount, $67,042.27 of this refund claim.

Form **843** (Rev. November 2002) Department of the Treasury Internal Revenue Service

# Claim for Refund and Request for Abatement

OMB No. 1545-0024

▶ See separate instructions.

*Use Form 843 only if your claim involves* ***(a)*** *one of the taxes shown on line 3a or* ***(b)*** *a refund or abatement of interest, penalties, or additions to tax on line 4a.*

***Do not*** *use Form 843 if your claim is for—*

- *An overpayment of income taxes;*
- *A refund for nontaxable use (or sales) of fuel; or*
- *An overpayment of excise taxes reported on Form(s) 11-C, 720, 730, or 2290.*

Type or print

| | |
|---|---|
| Name of claimant<br>UNICO SERVICES INC. | Your SSN or ITIN |
| Address (number, street, and room or suite no.)<br>PO BOX 887 | Spouse's SSN or ITIN |
| City or town, state, and ZIP code<br>BENICIA, CA 94510-0887 | Employer identification number (EIN)<br>95 2885601 |
| Name and address shown on return if different from above | Daytime telephone number<br>( ) |

1 Period. Prepare a separate Form 843 for each tax period
From 07 / 01 / 2001 to 09 / 30 / 2001

2 Amount to be refunded or abated $ 4073.15

3a Type of tax, penalty, or addition to tax:
☑ Employment ☐ Estate ☐ Gift ☐ Excise (see instructions)
☐ Penalty—IRC section ▶

b Type of return filed (see instructions):
☐ 706 ☐ 709 ☐ 940 ☑ 941 ☐ 943 ☐ 945 ☐ 990-PF ☐ 4720 ☐ Other (specify)

4a Request for abatement or refund of:
☐ Interest as a result of IRS errors or delays.
☐ A penalty or addition to tax as a result of erroneous advice from the IRS.

b Dates of payment ▶

5 **Explanation and additional claims.** Explain why you believe this claim should be allowed, and show computation of tax refund or abatement of interest, penalty, or addition to tax. If you need more space, attach additional sheets.

SEE ATTACHED RIDER

**Signature.** If you are filing Form 843 to request a refund or abatement relating to a joint return, both you and your spouse must sign the claim. Claims filed by corporations must be signed by a corporate officer authorized to sign, and the signature must be accompanied by the officer's title.

Under penalties of perjury, I declare that I have examined this claim, including accompanying schedules and statements, and, to the best of my knowledge and belief, it is true, correct, and complete.

[signature] President — 9/16/05

Signature (Title, if applicable. Claims by corporations must be signed by an officer.) Date

Signature Date

D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries. During the year at issue, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part. Pixley Services Limited transferred certain rights to the employment services of Dean D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee leasing and employee temporary services. Thus, D. Gordon Potter became an employee of Release Me, Inc. during the year at issue. Release Me, Inc. contracted with Unico Service Co., Inc. to provide skilled labor. Pursuant to this contractual relationship with Pixley Services Limited, Release Me, Inc. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter. As part of the contract between Unico Service Co. and Release Me, Inc., Release Me, Inc. provided the services of D. Gordon Potter. While providing services to Unico Service Co., D. Gordon Potter worked on multiple business projects.

Unico Service Co. made periodic payments to Release Me, Inc., pursuant to the skilled labor contract discussed above, and Release Me, Inc. included these amounts on its income tax return. Release Me, Inc., in turn, paid substantial wages to D. Gordon Potter and paid the employer's portion of the employment tax pursuant to the Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Release Me, Inc. D. Gordon Potter included these wages in income and paid income tax and the employee's portion of the employment tax, accordingly.

Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non-vested, retirement plan is a non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan. Therefore, the contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter constitutes deferred compensation, which is not includable as wages or income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter. *See* I.R.C. §§ 83, 451. Therefore, Unico Services, Inc. is not liable for the employer's portion of employment tax on the amounts paid by Unico Services, Inc. to Release Me, Inc. in excess of the amounts paid by Release Me, Inc. to D. Gordon Potter.

*The Form of the Transaction Must Be Respected*

The Commissioner erroneously asserts that the above transaction lacks economic substance, and the above transaction should be disregarded and re-written for federal tax purposes. The Commissioner, instead of respecting the form, desires to treat the

transaction as a direct employer-employee relationship between D. Gordon Potter and Unico Services, Inc. Thus, the Commissioner alleges that Unico Services, Inc. must pay the employer's portion of employment tax, during the period at issue, on the full amount of payments from Unico Industrial Services, Inc. to the unrelated employee leasing company, Release Me, Inc.

The Commissioner's assertion that the transaction lacks economic substance and should be disregarded and re-written is in direct conflict with relevant case law. In Coltec Industries Inc. v. United States, 62 Fed. Cl. 716 (2004), the Court ruled that a similar arrangement was valid, in which a company transferred contingent liabilities associated with asbestos claims against a subsidiary to an entity the company created and then sold at a loss. In so ruling, the Court stated, "[W]here a taxpayer has satisfied all the statutory requirements established by Congress, as Coltec did in this case, the use of the 'economic substance' doctrine to trump 'mere compliance with the code' would violate the separation of powers...." *See also* TIFD III-E, Inc. v. United States, 342 F. Supp. 94 (D.Conn. 2004).

The transaction set forth above satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Therefore, pursuant to Coltec and TIFD III-E, the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

*Penalties Do Not Apply*

If it is ultimately concluded that D. Gordon Potter is not entitled to a refund of the tax in the case at hand, penalties do not apply in this case. Where a taxpayer takes a position that has a reasonable basis in law and fact, neither the negligence penalty nor the substantial understatement penalty shall apply. I.R.C. § 6662. Under Treas. Reg. § 1.6662-3(b)(3), a return position is reasonable where based on one or more of the authorities listed in Treas. Reg. § 1.6662-4(d)((3)(iii). As set forth above, the plain language of the statutes and published case law supports the return position of D. Gordon Potter. The issues in this case represent a previously untested, complicated area of the tax law that is subject to multiple reasonable interpretations. Therefore, no penalties should attach.

Moreover, the reasonable cause and good faith exception in Treas. Reg. § 1.6664-4 may relieve taxpayers from liability from penalties even if the return position does not satisfy the reasonable basis standard. Reasonable cause is established when a taxpayer shows that he reasonably relied on the advice of an accountant or attorney. United States v. Boyle, 469 U.S. 241 (1985). In the case at hand, taxpayer relied upon the advice of competent accountants and attorneys, and, therefore, satisfies the reasonable cause exception.

Taxpayer is also entitled to additional deductions for real estate taxes paid during the year at issue.

For the above stated reasons, taxpayer respectfully requests that the Commissioner grant him a refund of taxes paid during the year at issue and reverse the assessment of penalties and interest.

Rider to Form 1040X

Unico Services, Inc.
95-2885601

REQUEST FOR IMMEDIATE REFUND CLAIM DISALLOWANCE

Pursuant to I.R.M. 4.23.13.4 and IRM 4512(2)(g)(Jan. 30, 1987), taxpayer Unico Services, Inc. respectfully requests that the Commissioner immediately disallow this refund claim without administrative consideration. *See* I.R. 1600 (Apr. 26, 1976), 9 Stand. Fed. Tax Rep. (CCH) ¶ 6609 (1976).

In support of this Request for Refund Claim Disallowance, taxpayer submits that the merits of this refund claim have previously been the subject of an administrative examination. Re-evaluation by the Commissioner of this refund claim would be fruitless and serve only to delay commencement of a refund suit by taxpayer.

This Request for Refund Claim Disallowance is for the employer's portion of employment taxes for the period ending September 30, 2001. The amount of this refund claim is equal to $4,073.15.

Taxpayer agrees that the Commissioner's granting of this Request for Refund Claim Disallowance and issuance of a Certified Notice of Claim Disallowance will commence the running of the two-year period of limitations for filing a refund suit pursuant to Proc. & Admin. Reg. § 301.6532-1(c).

WHEREFORE, taxpayer respectfully requests that the Commissioner immediately issue a Certified Notice of Claim Disallowance on an expedited basis disallowing the full amount, $4,073.15, of this refund claim.

**4.23.13.4 No Consideration Given Certain Refund Claims (02-01-2003)**

(1) No consideration will be given to a claim for refund of employment tax which:

a. was not timely filed;

b. is based solely on alleged unconstitutionality of Revenue Acts;

c. is based on a return stamped "Waiver of refund," or there is other evidence in the case file indicating that a refund was waived as a consideration in a settlement by the Department of Justice, the Chief Counsel's Office, etc;

d. relates to a return closed on the basis of a final court order, unless a refund may nevertheless be allowed under specific provisions of the Code;

e. covers a taxable period in which the tax liability or specific issues were the subject of a final closing agreement under IRC section 7121, or in which the tax liability was compromised under IRC section 7122;

f. is the subject of a request for withdrawal by the claimant;

g. is based solely on an issue considered in previously examined returns of the claimant who requests in writing the immediate issuance of a statutory notice of claim disallowance;

h. raises issues that were allowed in the previous closing of the case; or

i. purports to be a claim for refund but actually is a request for reconsideration of a claim previously disallowed.

(2) If a claim for refund is within types (1)(a) through (e) above, Letter 905(DO) or Letter 906(DO) or Letter 916 (C/DO) (with applicable box checked) will be issued to the taxpayer advising that no consideration can be given to the claim. There are certain exceptions to those claims described in (1)(e), based on statutory exceptions to finality of closing agreements, and claims based on issues not included in prior specific matter closing agreements.

(3) If a claim is within types (1)(f) and (g) above, a certified notice of claim disallowance will be issued and no other action needs to be taken.

(4) If a claim is identified as type (1)(h) above and was filed solely as a protective claim on invitation of the Service, it will be associated with the case file without further audit action. A no-consideration letter will not be issued to the claimant, but a memorandum for the file will be attached to the claim explaining why no action was taken. A type (1)(h) claim filed under any other circumstances requires issuance of Letter 916 (C/DO). A copy will be placed in the case file as a record of the action taken.

(5) Claims involving years previously closed by Appeals Office will be handled as provided in IRM 4.23.13.7.