IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

No. 05-955 T[1]
(Judge Loren A. Smith)

UNICO INDUSTRIAL SERVICES INC.,

Plaintiff

v.

THE UNITED STATES,

Defendant

---

No. 05-954 T

D. GORDON POTTER,

Plaintiff

v.

THE UNITED STATES,

Defendant

---

# JOINT PRELIMINARY STATUS REPORT

---

Pursuant to Appendix A, Part III, ¶ 4, RCFC, the parties hereby provide this Joint

[1]Proceedings on these matters were consolidated by order entered February 22, 2006.

Preliminary Status Report.

(a) Jurisdiction: The jurisdiction of this Court over plaintiffs' suits and the United States' counterclaims, to the extent it exists, is conferred by 28 U.S.C. § 1491(a)(1).

**Plaintiffs' Further Statement**: Plaintiff disagrees that subject matter jurisdiction is an issue for Counts I, II and IV.

**Defendant's Further Statement**: The United States has identified a possible jurisdictional defect with respect to plaintiffs' suits. Plaintiffs filed their suits in this Court prior to the expiration of six months from the filing of their refund claims with the IRS. Pursuant to § 6532(a)(1), plaintiffs' suits are untimely, thus depriving the Court of subject matter jurisdiction, unless the IRS rendered a decision on plaintiffs' refund claims prior to the date they filed suit. The United States is in the process of consulting with the IRS about this jurisdictional issue.

In addition, this Court lacks subject matter jurisdiction over plaintiffs' Fifth Amendment Due Process and Takings Clause claims (Counts I and II in both complaints) because the Due Process clause of the Fifth Amendment is not a money-mandating provision, and claims under that clause do not fall within the jurisdiction of the Court of Federal Claims under 28 U.S.C. § 1491(a), and because plaintiffs allege that the underlying takings were unlawful. Finally, this Court lacks subject matter jurisdiction over Unico's refund claim for the penalties and interest assessed for the tax period ending September 30, 2001, and Mr. Potter's claim with respect to penalties (Count IV in both

complaints) because plaintiffs have not paid all assessed penalties and interest in full as required pursuant to the full-payment rule. *See Flora v. United States*, 362 U.S. 145, 163 (1960); *Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993).

(b) Consolidation: The Court consolidated these two cases by order entered February 22, 2006.

(c) Bifurcation: While the parties agree that separate trials on the questions of liability and damages (*i.e.*, the amount of any underpayment or overpayment of tax and interest) should be unnecessary in this case, we would ask that the Court first determine the question of liability only and thereafter permit the parties a reasonable period of time within which to attempt to agree upon any necessary recomputation of tax liability and interest due, with a view to the parties submitting an agreed stipulation as to the amount of any money judgment. This will avoid unnecessary time at trial devoted to the question of computations.

______(d) Deferral of Proceedings: The parties are not aware of any basis for transferring or remanding this case to another tribunal. There are related cases pending in the United States Tax Court brought by Unico with respect to corporate income tax (Tax Court Case Nos. 6465-02, 10452-04, and 10796-05), but the parties do not believe that those pending cases should cause this Court to defer proceedings in this case.

______(e) Remand or Suspension: The parties are not aware of any basis for remand or suspension of this case.

(f) Joinder of Additional Parties: The parties are not aware of any additional parties to be joined.

(g) Dispositive Motion:

**Plaintiffs' Statement**: No motions will be filed.

**Defendant's Statement**: The United States intends to file a motion to dismiss the claims for which the Court lacks subject matter jurisdiction by no later than April 28, 2006. The United States does not currently anticipate filing a motion for summary judgment with respect to the employment tax and income tax refund claims because these claims are likely to involve disputed material facts.

(h) Factual and Legal Issues:

**Plaintiffs' Statement**: D. Gordon Potter is an individual with expertise in the mechanical engineering industry particularly with respect to the assembly, repair, servicing and reinstallation of pumps, gearboxes and other rotating equipment commonly used in the oil refining and chemical industries. During the year at issue, D. Gordon Potter entered into an employment contract and relationship with Pixley Services Limited, a company based in Dublin, Ireland. The rights obtained by Pixley Services Limited from the employment relationship with D. Gordon Potter were transferable in part. Pixley Services Limited transferred certain rights to the employment services of Dean D. Gordon Potter to Release Me, Inc., a company engaged in the business of employee

leasing and employee temporary services. Thus, D. Gordon Potter became an employee of Release Me, Inc. during the year at issue. Release Me, Inc. contracted with Unico Services Inc. to provide skilled labor. Pursuant to this contractual relationship with Pixley Services Limited, Release Me, Inc. paid to Pixley Services Limited a contractual price for the purchase of certain rights to the employment services of D. Gordon Potter. As part of the contract between Unico Services Inc. and Release Me, Inc., Release Me, Inc. provided the services of D. Gordon Potter. While providing services to Unico Services Inc., D. Gordon Potter worked on multiple business projects.

Unico Services Inc. made periodic payments to Release Me, Inc., pursuant to the skilled labor contract discussed above. Release Me, Inc., in turn, paid substantial wages to D. Gordon Potter pursuant to the Potter's contractual rights set forth in the employment contract with Pixley Services Limited, which had been assigned to Release Me, Inc. D. Gordon Potter included these wages in income and paid tax, accordingly.

Pursuant to the contractual employment agreement of Pixley Services Limited and D. Gordon Potter, Pixley established and funded a non-vested, retirement plan for the future benefit of D. Gordon Potter. The non-vested, retirement plan was equivalent to a revocable trust that was subject to the creditors of Pixley Services Limited. The non-vested, retirement plan is a non-transferable plan, and D. Gordon Potter has no immediate right to receive the benefits of the non-vested, retirement plan. Therefore, the contribution made by Pixley Services Limited for the future benefit of D. Gordon Potter

constitutes deferred compensation, which is not includable in income of D. Gordon Potter until a future date when the retirement plan vests and disbursement are available to D. Gordon Potter. *See* I.R.C. §§ 83, 451.

*The Form of the Transaction Must Be Respected*

The Commissioner erroneously asserts that the above transaction lacks economic substance, and the above transaction should be disregarded and re-written for federal tax purposes. The Commissioner, instead of respecting the form, desires to treat the transaction as a direct employer-employee relationship between D. Gordon Potter and Unico Industrial Services, Inc. and Unico Replacement Parts, Inc. Thus, the Commissioner alleges that D. Gordon Potter must recognize as income during the year at issue, the full amount of payments from Unico Industrial Services, Inc. and Unico Replacement Parts, Inc. to the unrelated employee leasing company, Release Me, Inc.

The Commissioner's assertion that the transaction lacks economic substance and should be disregarded and re-written is in direct conflict with relevant case law. In Coltec Industries Inc. v. United States, 62 Fed. Cl. 716 (2004), the Court ruled that a similar arrangement was valid, in which a company transferred contingent liabilities associated with asbestos claims against a subsidiary to an entity the company created and then sold at a loss. In so ruling, the Court stated, "[W]here a taxpayer has satisfied all the statutory requirements established by Congress, as Coltec did in this case, the use of the 'economic substance' doctrine to trump 'mere compliance with the code' would violate the

separation of powers…." *See also* TIFD III-E, Inc. v. United States, 342 F. Supp. 94 (D.Conn. 2004).

The transaction set forth above satisfies the plain language of the statutory requirements set forth in I.R.C. §§ 83, 451. Therefore, pursuant to Coltec and TIFD III-E, the economic substance doctrine does not apply, and the transaction set forth above must be respected, may not be disregarded, and may not be re-written.

Taxpayer is also entitled to additional deductions for real estate taxes paid during the year at issue.

**Defendant's Statement**[2]: This consolidated case is about Unico's employment tax liability (income tax withholding, FICA and FUTA tax) for tax quarters ending June 30, 2000, September 30, 2000, December 31, 2000, and September 30, 2001, and Mr. Potter's income tax liability for the 1998 tax year. The transaction at issue in this case is an instance of a type of transaction commonly referred to as an "Offshore Employee Leasing" or "OEL" arrangement. The IRS determined in Notice 2003-22, 1 C.B. 851 (2003) that "OEL" arrangements such as the one here are a tax avoidance transaction and a "listed transaction" for purposes of Treasury Regulations § 1.6011-4(b)(2) and § 301.6111-2(b)(2). The amount of employment tax and income tax at issue in this suit

---

[2]Factual statements made by the United States in section (h) are based on initial investigation and are not meant to waive subsequent assertions, informed by full discovery and opportunity for full review of this case, that the facts set forth in such statements are not true or did not occur.

are approximately $298,000 and $350,000, respectively.

Briefly described, the OEL arrangement in this case was implemented on January 1, 1998, when Mr. Potter claims to have severed his employment relationship with Unico, the company he co-founded and led for more than 30 years, and simultaneously entered into an employment contract with a foreign employee leasing company, Pixley Services Ltd. ("Pixley"). Pixley purportedly obtained the rights to Mr. Potter's worldwide services in exchange for a specified salary and a deferred compensation benefit. Pixley in turn leased its rights to Mr. Potter's services in the United States to Release Me. Immediately thereafter Release Me contracted with Unico, purportedly agreeing to provide Unico with Mr. Potter's services in exchange for specified lease payments. Under this OEL arrangement, Unico paid Release Me for Mr. Potter's services, and Release Me paid Mr. Potter a modest salary from the amount it received from Unico. Release Me then transferred the bulk of the funds it received from Unico to Pixley, which transferred the funds to various entities and accounts controlled by Mr. Potter.

Mr. Potter continued working for Unico just as he had for more than 30 years. Mr. Potter entered into the OEL arrangement, which involves significantly more accounts and entities than are described here, for the purpose of avoiding taxes. More specifically, Mr. Potter included in his 1998 income only the relatively small payment he received from Release Me, despite the fact that he controlled the entities and accounts that ultimately received the bulk of the much larger amount of money paid by Unico for his services.

Under the scheme, however, Unico claimed a current deduction for the full amounts paid to Release Me for Mr. Potter's services, characterizing those amounts as ordinary and necessary business expenses labeled "outside services." Unico thus avoided paying employment tax on the amounts it paid as compensation for Mr. Potter's services.

Following examination of Mr. Potter's 1998 federal income tax return, the IRS issued a statutory notice of deficiency, reflecting a deficiency in the amount of $496,227.00, and a penalty under Code § 6662(a) in the amount of $99,245.00. Among other adjustments, the statutory notice of deficiency determined as taxable income the unreported amounts attributable to Mr. Potter's OEL arrangement. Upon audit reconsideration, the deficiency and penalty were adjusted to $353,413.00 and $70,825.00, respectively, for reasons unrelated to the OEL arrangement. On March 16, 2005, and June 21, 2005, Mr. Potter paid the IRS a total of $354,500.00 to satisfy his 1998 tax deficiency. On June 22, 2005, Mr. Potter filed a claim for refund for his 1998 tax year.

On April 7, 2004, Notices of Determination of Worker Classification were issued to Unico for the periods ending June 30, 2000, September 30, 2000, and December 31, 2000. And, on March 23, 2005, Notices of Determination of Worker Classification were issued for September 30, 2001, among other periods. The Notices determined that Mr. Potter was an employee of Unico and that Unico owed employment tax on the amounts sent by Unico to Release Me and Fair Skys for Mr. Potter's services. The IRS determined deficiencies in employment tax and imposed penalties for each of the tax periods. Unico

paid the employment tax due for these periods,[3] and then filed refund claims on July 28, 2005.

On August 24, 2005, the IRS issued notices of proposed claim disallowance to Mr. Potter and Unico. One day later, Mr. Potter and Unico both executed and sent to the IRS Form 2297, Waiver of Statutory Notification of Claim Disallowance, and Form 3363, Acceptance of Proposed Disallowance of Claim for Refund or Credit. Mr. Potter and Unico filed their complaints on August 30, 2005, and then filed first amended complaints on September 27, 2005.

Both Mr. Potter and Unico assert four claims in the first amended complaint. They both allege that the IRS assessed and collected income tax from them in violation of the Fifth Amendment Due Process Clause and the Fifth Amendment Takings Clause (Counts I and II in both complaints). In addition, Mr. Potter alleges that he is entitled to a refund of the income tax he has paid for tax year 1998 (Count III) and that penalties do not apply for this tax period (Count IV). Unico alleges that it is entitled to a refund of the employment tax, penalties, and interest it has paid (Count III), and that penalties do not apply (Count IV). Mr. Potter is seeking a judgment in the amount of $354,500, in addition to interest, attorneys' fees, costs, and a finding that the negligence penalty imposed by the IRS does not apply, while Unico is seeking a judgment in the amount of

[3]Unico did not pay the full amount of penalty and interest for the quarter ending September 30, 2001.

$297,571.20, in addition to interest, attorneys' fees, and costs.

The United States filed its answers on November 30, 2005, and then filed amended answers and counterclaims on December 20, 2005. In addition to denying that plaintiffs are entitled to the relief they are seeking, the United States asserts that the Court lacks subject matter jurisdiction over the Constitutional claims (Counts I and II in both complaints), Mr. Potter's request for a finding that the penalty imposed by the IRS does not apply in this instance (Count IV in Mr. Potter's complaint), and Unico's refund claim for the penalties and interest assessed for tax period ending September 30, 2001 (Count IV in Unico's complaint). The United States also asserts counterclaims for the total penalty and interest assessed against Mr. Potter for the 1998 tax period, $185,119.42, and the total penalty and interest assessed against Unico for the tax period ending September 30, 2001, in the amount of $1,897.29, because plaintiffs have not satisfied those liabilities. Plaintiffs filed their responses to the counterclaims on December 22, 2005, and December 27, 2005.

The central legal issue with respect to Mr. Potter's income tax refund claim is whether the payments made by Unico to Release Me were compensation to Mr. Potter for services he performed. Compensation for services constitutes income pursuant to Code § 61(a). Mr. Potter has the burden of proving he is entitled to exclude Unico's payments from his 1998 income. The United States anticipates that plaintiff will argue that the payments made by Unico to Release Me, which where then transferred to Pixley and deposited in a non-vested retirement plan for the future benefit of plaintiff, constitute

deferred compensation, which is not included in plaintiff's current income for 1998 pursuant to Code §§ 83 and 451.

The central legal issue with respect to Unico's employment tax refund claim is whether the OEL arrangement severed the employment relationship between Unico and Mr. Potter. The United States anticipates that Unico will argue that Mr. Potter was not an employee of Unico during the tax periods at issue in this suit.

The United States will ask the Court to evaluate plaintiffs' claims in light of the economic substance, substance over form, and step transaction doctrines. Under any or all of these well-established doctrines, it is apparent that the substance of the OEL arrangement was a scheme that enabled Mr. Potter to avoid reporting compensatory income and Unico to avoid employment taxes on wages it claims were deferred, yet all the while Mr. Potter remained as Unico's chief executive and employee and performed the identical services he performed prior to implementing the OEL arrangement. In substance, the OEL Arrangement is a non-qualified deferred compensation plan that does not effectively defer income, because it runs afoul of the constructive receipt doctrine (codified in § 451), the economic benefit doctrine, and/or § 83 (relating to transfers of property in connection with the performance of services). In addition, under any of the tests for determining whether an employment relationship exists, Mr. Potter was an employee of Unico pursuant to § 3121(d)(1) during the tax periods at issue in this suit. Because Mr. Potter was an employee, Unico is liable for employment tax for those tax

periods.

(i) Settlement and ADR:

**Plaintiffs' Statement**: Settlement discussions are occurring with the IRS for global resolution of issues in this case and the other related issues not before the court. IRS has informed Plaintiff that they are working with Department of Justice. No anticipated ADR Requests.

**Defendant's Statement**: Defendant does not believe that the Court of Federal Claims' ADR Program or any other means of ADR are likely to be helpful in resolving this case. As the United States had no knowledge of the transactions between Mr. Potter, Unico, and the various entities discussed in Section (h), *supra*, before the IRS's audit, extensive discovery of this case is necessary. ADR techniques are not likely to be helpful in reaching a settlement here – at least not at this early date, when the attorneys for the United States have not yet adequately developed the facts of the case.

As the Court is aware, the Tax Division has a good record of employing its routine procedures to settle cases that should be settled, and ADR techniques are not normally necessary. If there is an opportunity to settle this case before commencing trial, the Tax Division will pursue that opportunity.

(j) Expedited Trial:

**Plaintiffs' Statement**: Plaintiff requests an expedited trial. The IRS Collection

techniques will needlessly force Plaintiff into bankruptcy before decision of this case, if delayed trial, as suggested by Defendant, occurs.

**Defendant's Statement**: The United States anticipates proceeding to trial, but opposes plaintiffs' request for expedited scheduling. Because this is a fact-intensive and complex case, as briefly described in section (h) *infra*, the United States will need an adequate amount of time to conduct discovery and prepare for trial. The expedited schedule proposed by plaintiffs in section (m) *supra* does not provide an adequate amount of time.

Plaintiffs' assertion regarding the possible financial impact of IRS collection efforts has no bearing with respect to this litigation because Mr. Potter and Unico have paid their income and employment taxes in full for the periods at issue in this suit, and are seeking refunds of those taxes. If plaintiffs prevail in this case, they will be entitled to statutory interest. While plaintiffs may be concerned about IRS collection efforts, any such efforts would be for periods neither before this Court nor within its jurisdiction. In any event, plaintiffs' concerns should not prevent the United States from preparing an appropriate defense to plaintiffs' claims.

(k) Electronic Case Management: These cases were designated as ECF cases on August 30, 2005.

(l) Other Information: None.

(m) Proposed Discovery Plan:

**Plaintiffs' Proposed Discovery Plan**:

(ii) Completion date for fact discovery: May 31, 2006.

(iii) Expert discovery:

(a) Identification of Plaintiffs' Experts' identities and reports: April 1, 2006.

(b) Deposition of Plaintiffs' experts: May 1, 2006.

(c) Identification of Defendant's Experts' Identities and Reports: April 1, 2006.

(d) Deposition of Defendant's Experts: May 1, 2006.

(e) Disclosure of Rebuttal Experts or Reports: May 15, 2006.

(f) Completion date for Expert Discovery: May 31, 2006.

(iv) Completion date for all discovery: May 31, 2006.

(v) Earliest trial date: June 31, 2006.

**Plaintiffs' Statement**: The case is fully developed. The facts are identical to the facts that were part of the prior Tax Court Case which the IRS fully developed. This is merely a companion case. There is no foreseeable need for additional discovery on either side.

**Defendant's Proposed Discovery Plan**:

(i) *Initial disclosures*: The parties will make their initial disclosures within 14 days after filing this Joint Preliminary Status Report, pursuant to RCFC 26(a)(1).

(ii) *Completion date for fact discovery*: September 1, 2006

(iii) *Expert discovery*:

(a) *Identification of plaintiff's experts' identities and reports*: August 1, 2006

(b) *Depositions of plaintiff's experts*: September 18, 2006

(c) *Identification of defendant's experts' identities and reports*: October 18, 2006.

(d) *Depositions of defendant's experts*: November 30, 2006

(e) *Disclosure of rebuttal experts or reports*: December 15, 2006

(f) *Completion date for expert discovery*: December 15, 2006

(iv) *Completion date for all discovery*: December 15, 2006

(v) *Earliest trial date*: March 5, 2007

(vi) *Anticipated trial duration*: 3 to 5 days

**Defendant's Statement**: The United States opposes plaintiffs' request for a shortened discovery schedule and disagrees with plaintiffs' assertion that there is no need

for additional discovery in this case. First, this case is not merely a "companion case" to the Tax Court cases brought by Unico. It is a *de novo* proceeding. As a result, neither party is limited by the discovery obtained in the related Tax Court proceedings. Second, the facts and issues in this case are not, as plaintiffs suggest, identical to the facts and issues in the Tax Court proceedings. The Tax Court proceedings involve Unico's corporate income tax while this consolidated case involves Unico's employment tax and Mr. Potter's income tax. Indeed, Mr. Potter is not a party to the Tax Court proceeding. Both parties are entitled to conduct discovery of the facts and issues in this case even though it may overlap to some extent with discovery conducted during the Tax Court proceeding.

Respectfully submitted,

s/Robert J. Stientjes
ROBERT J. STIENTJES
Gasaway & Stientjes LLP
41 S. Old Orchard Ave., Ste. B
Saint Louis, MO 63119
(314) 961-3812
FAX (314) 918-7120

*Attorney for Plaintiff*

s/Jennifer P. Wilson
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
FAX (202) 514-9440
jennifer.p.wilson@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

February 28, 2006