**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-955 T and 05-954 T**
**(Consolidated on February 22, 2006)**
**(Judge Loren A. Smith)**

**UNICO INDUSTRIAL SERVICES INC. and D. GORDON POTTER,**

**Plaintiffs**

**v.**

**THE UNITED STATES,**

**Defendant**

# DEFENDANT'S PRELIMINARY STATEMENT OF FACTUAL ISSUES

Pursuant to the Court's order dated March 14, 2006, defendant United States submits the following preliminary statement of factual issues. As suggested by the Court, counsel for the United States prepared this statement in consultation with the IRS attorneys who represented the Commissioner in the proceeding brought by plaintiff Unico Industrial Services, Inc. ("Unico") with respect to corporate income tax in the United States Tax Court.[1] In addition, counsel for the United States reviewed the administrative files provided by the IRS. Counsel for the United States learned that the IRS has

[1]Unico actually brought three cases in Tax Court, which were consolidated on December 9, 2005. The trial of the consolidated cases commenced on January 9, 2006, but was stopped prior to the completion of testimony because the parties entered into a stipulation of settled issues. To date, the Tax Court has not entered a decision.

developed important facts relevant to this litigation, but that many other relevant facts remain to be developed. For example, the IRS was not able to conduct a meaningful interview of Mr. Potter, a plaintiff in this case and the central figure in the employee leasing arrangement at issue.[2] As a result, the following statement of factual issues is preliminary, and further discovery is required – not only to resolve these issues, but also to reveal additional issues.

In order to clarify the discovery that the United States anticipates requesting, we have included a proposed discovery plan (Attachment A). The United States will make every effort to avoid duplication of discovery previously conducted in the Tax Court proceeding involving Unico's corporate income tax. However, the United States respectfully requests an adequate period of time in which to conduct the additional discovery required in order to prepare and defend this *de novo* proceeding, which involves legal issues not previously litigated in the Tax Court proceeding brought by Unico.

**CURRENTLY IDENTIFIED FACTUAL ISSUES**

1. Whether Mr. Potter and Unico intended to sever their long-standing employment relationship on January 1, 1998, or at any other time relevant to this litigation.

---

[2]The IRS conducted a preliminary interview of Mr. Potter during which only limited information was obtained. During a later interview, Mr. Potter claimed the Fifth Amendment privilege in response to all questions.

2. Whether Mr. Potter remained the president, key employee, and majority shareholder of Unico after January 1, 1998.

3. Whether Unico's professional license to engage in business in California was dependent upon Mr. Potter being an officer and/or employee during the time periods relevant to this litigation.

4. Whether Mr. Potter continued to perform services for Unico after January 1, 1998, and the character of the services he continued to perform, if any.

5. Whether Mr. Potter became an employee of Pixley as a result of the Employment Contract dated January 1, 1998.

6. Whether Mr. Potter became an employee of Release Me, Inc. (a U.S. company) as a result of the Agreement to Furnish Personnel Services dated January 1, 1998.

7. Whether Mr. Potter became an employee of International Employee Services, Inc. ("IESI") on January 1, 1999, when Pixley assigned the Employment Contract to IESI.

8. Whether Mr. Potter became an employee of Fair Skys Corp. ("Fair Skys") on April 15, 2000, when Release Me assigned the Agreement to Furnish Personnel Services to Fair Skys.

9. Whether Release Me, Fair Skys, Pixley, and/or IESI had the ability or intent to direct or control the manner or means of Mr. Potter's work at Unico as a

result of the purported leasing arrangement.

10. Whether Mr. Potter's salary and benefits under the purported leasing arrangement were negotiated at arm's length.

11. Whether the payments made by Unico to Release Me and Fair Skys, purportedly for Mr. Potter's services, grew at a rate consistent with the rate of growth for the salary that Unico paid Mr. Potter in the years leading up to 1998.

12. Whether the purported salary that Release Me and Fair Skys paid to Mr. Potter in 1998 through 2001 was significantly less than the salary Unico paid Mr. Potter prior to 1998.

13. Whether the payments Unico made to Release Me and Fair Skys were made at the direction of Mr. Potter.

14. Whether Mr. Potter settled the Dean Gordon Potter Irrevocable Trust ("ILIT") on May 1, 1998, naming Unico employee Marvin Kauffman as trustee and his spouse and children as beneficiaries.

15. Whether ILIT settled the Portera Trust, an offshore asset protection trust located in the Islands of the Bahamas, on May 5, 1998, naming Mr. Potter's friend Timothy Boe as the United States Agent and Mr. Potter's spouse and children as the beneficiaries.

16. Whether the Portera Trust purchased a life insurance policy on Mr. Potter's

life from St. James Life of Barbados using money from an ILIT domestic account deposited directly by Mr. Potter and naming ILIT as the beneficiary.

17. Whether St. James Life of Barbados created an investment portfolio for the life insurance policy purchased by the Portera Trust that provided for the formation of Namur Holdings Ltd. ("Namur").

18. Whether Namur, a Nevis Island entity, was incorporated as an International Business Corporation, as of December 30, 1997.

19. Whether Namur assigned all of its assets to Namur Holdings Ltd., located in the Cayman Islands, by Assignment and Assumption Agreement, effective July 20, 2000.

20. Whether Mr. Potter entered into a Private Annuity Agreement with Namur on January 2, 1998, providing for a fixed amount of retirement income for Mr. Potter.

21. Whether Mr. Potter sold 10,000 shares of Unico stock to Namur on January 2, 1998, in exchange for an unsecured promise by Namur to make future annuity payments to Mr. Potter.

22. Whether Release Me transferred the funds received from Unico, purportedly in payment for Mr. Potter's services, to Pixley.

23. Whether Pixley transferred the majority of the funds received from Release

Me from its secured bank account at Guinness & Mahon Bank in Dublin, Ireland, to an account titled Rosmol Commercial Company Limited ("Rosmol") with the Bank of Scotland, which is located on Guernsey Island.

24. Whether any public records exist with respect to Rosmol.

25. Whether Pixley and Namur entered into a Revolving Line of Credit Agreement on June 8, 1998, pursuant to which Namur could receive a maximum of $1,500,000.00 from Pixley, with the assets procured by Namur serving as security for Pixley.

26. Whether Namur agreed to perfect the security interests of its creditor, Pixley, and to pay Pixley six percent interest on advanced funds in addition to 20 percent on the net profit generated by Namur with respect to the advanced funds.

27. Whether Pixley entered into a parallel Revolving Line of Credit on the same date, June 8, 1998, with Ruritania Limited ("Ruritania"), pursuant to which Pixley could receive a maximum of $1,500,000.00 from Ruritania.

28. Whether Pixley's revolving line of credit with Ruritania was unsecured and provided for five and one half percent interest on advanced funds plus 15 percent on the net profits generated by Namur.

29. Whether any public records exist with respect to Ruritania.

30. Whether Mr. Potter exercised control or had the ability to exercise control

over the entities and accounts described in paragraphs 14 through 29 and/or the funds flowing through them.

31. Assuming Mr. Potter exercised control or had the ability to exercise control over the entities and accounts described in paragraphs 14 through 29 and/or the funds flowing through them, whether his control was subject to substantial limitations or restrictions.

32. Whether, on July 23, 1998, Namur opened an account at a branch of CIBC Trust Company (Bahamas) Ltd. ("CIBC") located in Miami, Florida, with an initial deposit of $530,000.

33. Whether the source of the $530,000 deposit by Namur into the CIBC account in Miami was the funds originally transferred from Unico to Release Me, purportedly as payment for Mr. Potter's services.

34. Whether the two revolving lines of credit enabled the funds to be transferred to the CIBC account in the name of Namur.

35. Whether Mr. Potter directly or indirectly exercised control or had the ability to exercise control over the CIBC account in Miami, and whether his control was subject to substantial limitations or restrictions.

36. Whether any of the funds characterized by plaintiffs as deferred compensation were subject to a substantial risk of forfeiture.

37. Whether any of the funds characterized by plaintiffs as deferred

compensation were actually or constructively received by Mr. Potter during the time periods relevant to this litigation.

38. Whether there was any security, collateral, or other form of guarantee that the funds characterized as deferred compensation would be paid to Mr. Potter in the future.

39. Whether the funds characterized as deferred compensation were subject to the creditors of Unico, Release Me, or Pixley.

40. Whether Mr. Potter and Unico entered into the employee leasing arrangement for the purpose of tax avoidance.

41. Whether Mr. Potter and/or Unico obtained tax benefits as a result of the employee leasing arrangement.

42. Whether Unico and Mr. Potter had an economic or business purpose for entering into the employee leasing arrangement other than tax avoidance.

43. Whether Unico and Mr. Potter had an economic or business purpose for the movement of funds through various foreign accounts other than tax avoidance.

44. Whether Unico and Mr. Potter had an economic or business purpose for paying fees to Release Me, Pixley, IESI, Fair Skys, and/or Rosmol other than to obtain the desired tax avoidance.

45. Whether Unico demonstrated negligence or disregard for the tax laws by its

failure to withhold income tax and pay FICA and FUTA taxes.

Respectfully submitted,

s/Jennifer P. Wilson

JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
FAX (202) 514-9440
jennifer.p.wilson@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/David Gustafson
Of Counsel

March 30, 2006