**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**Nos. 05-955 T and 05-954 T**
**(Consolidated on February 22, 2006)**
**Judge Loren A. Smith**

---

**UNICO INDUSTRIAL SERVICES INC. and D. GORDON POTTER,**

**Plaintiffs**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**PLAINTIFF'S REPLY TO DEFENDANT'S PRELIMINARY STATEMENT OF FACTUAL ISSUES**

---

Pursuant to the Court's order dated March 14, 2006, Plaintiffs Unico Services Inc. and D. Gordon Potter ("Plaintiffs"), by and through counsel, hereby replies to Defendant's Preliminary Statement of Factual Issues, filed on March 30, 2006, and responds as follows:

1. Plaintiffs hereby object to the issues, as raised by Defendant's Preliminary Statement of Factual Issues, as overburdensome, duplicative of the prior Tax Court proceedings, and should be barred from further discovery in this case. As set forth in the Joint Preliminary Status Report, this case is fully developed and should be set on a fast-track schedule. Plaintiffs specifically object as follows:

a. The majority of Defendant's currently identified factual issues are not facts in dispute. They have either been stipulated to in the companion case or have

been developed via administrative summons interviews and depositions, which in most circumstances were under oath and recorded by a court reporter. The parties already have over 10,000 pages of summons interview transcripts and deposition transcripts for individuals whom Defendant erroneously claims it needs to depose again, as listed in Schedule A attached to Defendant's Preliminary Statement of Factual Issues. Additionally, Plaintiffs have fully responded to 2 sets of Interrogatories and Requests for Production of Documents propounded by the IRS in the companion Tax Court case, which fully developed the bulk of the issues raised by Defendant's Preliminary Statement of Factual Issues. There is no disagreement over these issues. Plaintiffs are willing to stipulate to the prior stipulations again. The issues (as identified in Defendant's Preliminary Statement of Factual Issues as currently identified issues factual issues) are listed as follows, along with a description of where the information sought may be obtained:

1) Whether Mr. Potter and Unico intended to sever their long standing employment relationship on January 1, 1998, or at any other time relevant to this litigation.

This issue was previously stipulated to in the prior companion Tax Court Case.

2) Whether Mr. Potter remained the president, key employee, and majority shareholder of Unico after January 1, 1998.

This issue was previously stipulated in the prior companion Tax Court Case; additionally, this information is restated in the

summons interview transcripts of Joy Bryant, Marvin Kaufman, and Charles Deering.

5) Whether Mr. Potter became an employee of Pixley as a result of the Employment Contract dated January 1, 1998.

This issue was previously stipulated to in the prior companion Tax Court Case.

6) Whether Mr. Potter became an employee of Release Me, Inc. (a U.S. company) as a result of the Agreement to Furnish Personnel Services dated January 1, 1998.

This issue was previously stipulated to in the prior companion Tax Court Case; additionally, this information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

7) Whether Mr. Potter became an employee of International Employee Services, Inc. (IESI) on January 1, 1999, when Pixley assigned the Employment Contract to IESI.

This issue was previously stipulated to in the prior companion Tax Court Case.

8) Whether Mr. potter became an employee of Fair Skys Corp. (Fair Skys) on April 15, 2000, when Release Me assigned the Agreement to Furnish Personnel Services to Fair Skys.

This issue was previously stipulated to in the prior companion Tax Court Case.

9) Whether Release Me, Fair Skys, Pixley, and/or IESI had the ability or intent to direct or control the manner or means of Mr. Potter's work at Unico as a result of the purported leasing arrangement.

This information is restated in the summons interview transcripts of Michael Chatzky and Jacqueline Jensen.

13) Whether the payments Unico made to Release Me and Fair Skys were made at the direction of Mr. Potter.

This information is restated in the summons interview transcripts of Michael Chatzky, Alan Eber, and Joy Bryant.

14) Whether Mr. Potter settled the Dean Gordon Potter Irrevocable Trust (ILIT) on May 1, 1998, naming Unico employee Marvin Kauffman as trustee and his spouse and children as beneficiaries.

This information is restated in the summons interview transcript of Marvin Kauffman.

15) Whether ILIT settled the Portera Trust, an offshore asset protection trust located in the Islands of the Bahamas, on May 5, 1998, naming Mr. Potter's friend Timothy Boe as the United States Agent and Mr. Potter's spouse and children as the beneficiaries.

This information is restated in the summons interview transcript of Timothy Boe.

16) Whether the Portera Trust purchased a life insurance policy on Mr. Potter's life from St. James Life of Barbados using money from an ILIT domestic account deposited directly by Mr. Potter and naming ILIT as the beneficiary.

This information is restated in the summons interview transcript of Alan Eber.

17) Whether St. James Life of Barbados created an investment portfolio for insurance policy purchased by the Portera Trust that provided for the formation of Namur Holdings Ltd. (Namur).

This information is restated in the summons interview transcript of Alan Eber. Furthermore, this issue was previously stipulated to and was fully developed through interrogatories in the prior companion Tax Court case.

18) Whether Namur, a Nevis Island entity, was incorporated as an International Business Corporation, as of December 30, 1997.

This information is restated in the summons interview transcript of Alan Eber. Furthermore, Plaintiffs are willing to stipulate to this issue, thereby eliminating the need to conduct further discovery on this issue.

19) Whether Namur assigned all of its assets to Namur Holdings Ltd., located in the Cayman Islands, by Assignment and Assumption Agreement, effective July 20, 2000.

This information is restated in the summons interview transcript of Alan Eber. Furthermore, Plaintiffs are willing to stipulate to this issue, thereby eliminating the need to conduct further discovery on this issue.

20) Whether Mr. Potter entered into a Private Annuity Agreement with Namur on January 2, 1998, providing for a fixed amount of retirement income for Mr. Potter.

This information is restated in the summons interview transcript of Alan Eber. Furthermore, Plaintiffs are willing to stipulate to this issue, thereby eliminating the need to conduct further discovery on this issue.

21) Whether Mr. Potter sold 10,000 shares of Unico Stock to Namur on January 2, 1998, in exchange for an unsecured promise by Namur to make future annuity payments to Mr. Potter.

This information is restated in the summons interview transcript of Alan Eber. Furthermore, Plaintiffs are willing to stipulate to this issue, thereby eliminating the need to conduct further discovery on this issue.

22) Whether Release Me transferred the funds received from Unico, purportedly in payment for Mr. Potter's services, to Pixley.

This information is restated in the summons interview transcript of Michael Chatzky. Furthermore, this issue was previously stipulated to in the prior companion Tax Court case.

23) Whether Pixley transferred the majority of the funds received from Release Me from its secured account at Guinness & Mahon Bank in Dublin Ireland to an account titled Rosmol Commercial Company Limited (Rosmol) with the Bank of Scotland, which is located on Guernsey Island.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

24) Whether any public records exist with respect to Rosmol.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

25) Whether Pixley and Namur entered into a Revolving Line of Credit Agreement on June 8, 1998, pursuant to which Namur could receive a maximum of $ 1,500,000.00 from Pixley, with the assets procured by Namur serving as security for Pixley.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

26) Whether Namur agreed to perfect the security interest of its creditor, Pixley, and to pay Pixley six percent interest on advanced funds in addition to 20 percent on the net profit generated by Namur with respect to the advanced funds.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

27) Whether Pixley entered into a parallel Revolving Line of Credit on the same date, June 8, 1998, with Ruritania Limited (Ruritania), pursuant to which Pixley could receive a maximum of $1,500,000.00 from Ruritania.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

28) Whether Pixley's revolving line of credit with Ruritania was unsecured and provided for five and one half percent interest on advanced funds plus 15 percent on the net profits generated by Namur.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

29) Whether any public records exist with respect to Ruritania.

This information is restated in the summons interview transcript of Michael Chatzky and Alan Eber.

30) Whether Mr. Potter exercised control or had the ability to exercise control over the entities and accounts described in paragraphs 14 through 29 and/or the funds flowing through them.

This information is restated in the summons interview transcript of Alan Eber.

31) Assuming Mr. Potter exercised control over the entities and accounts described in paragraphs 14 through 29 and/or the funds

flowing through them, whether his control was subject to substantial limitations or restrictions.

This information is restated in the summons interview transcript of Alan Eber.

32) Whether, on July 23, 1998, Namur opened an account at a branch of CICB Trust Company (Bahamas) Ltd. (CICB) located in Miami, Florida, with an initial deposit of $530,000.

This information is restated in the summons interview transcript of Alan Eber.

33) Whether the source of the $530,000 deposit by Namur into the CIBC account in Miami was the funds originally transferred from Unico to Release me, purportedly as payment for Mr. Potter's services.

This information is restated in the summons interview transcript of Alan Eber.

34) Whether the two revolving lines of credit enabled the funds to be transferred to the CICB in the name of Namur.

This information is restated in the summons interview transcript of Alan Eber.

35) Whether Mr. Potter directly or indirectly exercised control or had the ability to exercise control over the CICB account in Miami, and whether his control was subject to limitations or restrictions.

This information is restated in the summons interview transcript of Alan Eber.

36) Whether any of the funds characterized by plaintiffs as deferred compensation were subject to a substantial risk of forfeiture.

This information is restated in the summons interview transcripts of Michael Chatzky and Alan Eber.

37) Whether any of the funds characterized by plaintiffs as deferred compensation were actually or constructively received by Mr. Potter during the time periods relevant to this litigation.

This information is restated in the summons interview transcript of Michael Chatzky and Alan Eber.

38) Whether there was any security, collateral or other from of guarantee that funds be characterized as deferred compensation would be paid to Mr. Potter in the future.

This information is restated in the summons interview transcript of Michael Chatzky.

39) Whether the funds characterized as deferred compensation were subject to the creditors of Unico, Release Me or Pixley.

This information is restated in the summons interview transcript of Alan Eber.

41) Whether Mr. Potter and/or Unico obtained tax benefits as a result of the employee leasing arrangement.

This information is restated in the summons interview transcript of Michael Chatzky and Alan Eber.

b. The remaining issues ask Plaintiffs to state its position with respect to the enumerated issues. Plaintiffs have already given its position on these issues through the examination, audit, and companion Tax Court proceedings for the past six years. It would be absurd for Defendant to conduct depositions and raise the same issues that have already been fully developed in the prior proceedings:

3) Whether Unico's professional license to engage in business in California was dependent upon Mr. Potter being an officer and/or an employee during the time periods relevant to this litigation.

4) Whether Mr. Potter continued to perform services for Unico after January 1, 1998, and the character of the services he continued to perform, if any.

10) Whether Mr. Potter's salary and benefits under the purported leasing agreement were negotiated at arm's length.

11) Whether the payments made by Unico to Release Me and Fair Skys, purported for Mr. Potter's services, grew at a rate consistent with the rate of growth for the salary that Unico paid Mr. Potter in the years leading up to 1998.

12) Whether the purported salary that Release Me and Fair Skys paid to Mr. Potter in 1998 through 2001 was significantly less than the salary Unico paid Mr. Potter prior to 1998.

c. Finally, several of Defendant's issues are legal determinations of factual situations and not factual issues. These legal determinations are better handled by the Court rather than through discovery. The facts relating to these legal issues are fully developed and were the subject of each of the previous summons interviews conducted by the IRS. Furthermore, the resolution of these issues can be found in the summons interview transcripts of Michael Chatzky and Alan Eber. These "alleged" factual issues are:

40) Whether Mr. Potter and Unico entered into the employee leasing arrangement for the purpose of tax avoidance.

42) Whether Unico and Mr. Potter had an economic or business purpose for entering into the employee leasing arrangement other than tax avoidance.

43) Whether Unico and Mr. Potter had an economic or business purpose for the movement of funds through the various foreign accounts other than tax avoidance.

44) Whether Unico and Mr. Potter had an economic or business purpose for paying fees to Release me, Pixley, IESI, Fair Skys, and/or Rosmol other than to obtain the desired tax avoidance.

45) Whether Unico demonstrated negligence or disregard for the tax laws by its failure to withhold income tax and pay FICA and FUTA taxes.

2. Additionally, Plaintiffs hereby object to the depositions of the individuals, as raised by Supplement A in Defendant's Preliminary Statement of Factual Issues, as

overburdensome, duplicative of the prior Tax Court proceedings, and should be barred from further discovery in this case. Through the IRS Summons Interviews and Tax Court depositions in the companion case, the IRS has amassed over 100 hours of sworn testimony and has generated over 10,000 pages of sworn testimony. To permit Defendant to conduct new depositions of the same individuals would be: (1) duplicative, (2) a waste of court resources, (3) unduly disrupt the individuals' livelihood, and (4) be oppressive on Plaintiffs. Plaintiffs specifically object as follows:

a. Michael Chatzky: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews held on July 22, 2003 and July 23, 2003. These interviews were held before two IRS attorneys, and a diligent revenue agent. Furthermore, these interviews generated over 10 hours of sworn testimony. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

b. Marion Holmes: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews or Tax Court discovery depositions held on April 17, 2003, April 18, 2003, April 22, 2003 and December 6, 2005. These interviews or depositions were held before 2 different sets of IRS attorneys and the same diligent revenue agent. Furthermore, these interviews or depositions generated over 20 hours of sworn testimony. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

c. Alan Eber: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons

Interviews held on December 11, 2002, December 12, 2002, January 8, 2003, and January 9, 2003. These interviews were held before two IRS attorneys and the same diligent revenue agent. Furthermore, the interviews generated over 20 hours of sworn testimony. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

d. Heidi Scholz: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews held on June 24, 2003 and June 25, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

e. Nimrod Haikin: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interview held on June 19, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

f. Peter Double: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interview held on June 11, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources. Additionally, Plaintiffs believe that the individual is no longer within the United States Jurisdiction and delaying the trial for Defendant to attempt to serve the individual would be imprudent.

g. Jacqueline Jensen: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews held on June 20, 2002, January 27, 2004, and July 14, 2005.

These interviews were conducted by three different sets of IRS attorneys and the same diligent revenue agent. Furthermore these interviews generated over 9 hours of sworn testimony. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

h. Gordon Weaver: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews held on April 10, 2003, and June 3, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

i. Timothy Boe: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interview held on December 04, 2002. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

j. Joy Bryant: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interviews held on December 12, 2002 and in the Tax Court trial. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

k. Marvin Kaufman: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interview held on April 11, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

l. Charles Deering: The issues raised with respect to the Defendant's questioning of this individual have all been addressed in the prior IRS Summons Interview held on December 4, 2002. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

m. Carol L. Monahan: The issues raised with respect to Defendant's questioning of this individual have all been address in a prior IRS Summons interview held on December 4, 2002. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

n. Gordon Potter: The issues raised with respect to Defendant's questioning of this individual have all been address in two prior IRS Summons interviews held on March 3, 2001, and December 3, 2003. Subjecting this individual to additional depositions would be unduly burdensome and would waste the Court's resources.

o. Michael Anthony Potter: Plaintiffs object to this deposition under Federal Rules of Evidence (FRE) 602, Lack of Personal Knowledge. During the relevant time periods, this individual was not an officer of the corporation nor was he connected with the transaction at issue in this case. He was in college at the time. The deposition of this individual is unduly burdensome, and would waste the Court's resources.

p. Joseph Kenny: This individual is a foreign person who previously indicated that he has no intent to subject himself to US jurisdiction. Given this individual's reluctance in the past and no indication of a change in his legal position,

there is no reason to delay the trial to allow Defendant to attempt to serve this individual.

q. Ian Phillips: This individual is a foreign person who previously indicated that he has no intent to subject himself to US jurisdiction. Given this individual's reluctance in the past and no indication of a change in his legal position, there is no reason to delay the trial to allow Defendant to attempt to serve this individual.

r. Fiona Moseley: This individual is a foreign person who previously indicated that he has no intent to subject himself to US jurisdiction. Given this individual's reluctance in the past and no indication of a change in his legal position, there is no reason to delay the trial to allow Defendant to attempt to serve this individual.

s. Ian Kilpatrick: This individual is a foreign person who previously indicated that he has no intent to subject himself to US jurisdiction. Given this individual's reluctance in the past and no indication of a change in his legal position, there is no reason to delay the trial to allow Defendant to attempt to serve this individual.

3. Plaintiffs believe that the issues in this case have been fully developed through the IRS examination, audit proceedings (which have occurred throughout the last 6 years), the companion Tax Court Proceedings; and have generated over 100 hours of sworn testimony and over 10,000 pages of sworn transcript testimony. To subject Plaintiffs to further discovery would unduly burden Plaintiffs and would be a waste of the Court's resources.

a. Furthermore, interrupting the personal lives of the parties that have fully cooperated with the prior IRS examination and audit proceedings, as well as the Tax Court proceedings, would be oppressive and unduly burdensome because the additional requested discovery would be duplicative and repetitive.

4. The hearing on the scheduling order is set for May 17, 2006. During the most recent conference call, the Court asked Plaintiffs' Counsel whether Plaintiffs prefer to conduct such hearing in person or by teleconference. Plaintiffs hereby respectfully requests that such hearing be conducted in person.

Wherefore, additional time for discovery should not be allowed, the cases should be set on a fast-track schedule, and the scheduling proposed by Plaintiffs in the Joint Preliminary Status Report dated should be incorporated by the Court in its scheduling order.

RESPECTFULLY SUBMITTED,

Date: April 18, 2006

By: *s/ Robert J. Stientjes*

Robert J. Stientjes
Attorney for Plaintiff
Gasaway & Stientjes LLC
1120 Olivette Executive Parkway
Suite 220
Saint Louis, Missouri 63132
Telephone: (314) 872-3988
Facsimile: (314) 872-7374