Nos. 05-955 T and 05-954 T
(Consolidated on February 22, 2006)
(Judge Loren A. Smith)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

UNICO INDUSTRIAL SERVICES INC. and D. GORDON POTTER,

Plaintiffs

v.

THE UNITED STATES,

Defendant

UNITED STATES' REPLY TO PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
STEVEN FRAHM
JENNIFER P. WILSON
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6494
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**Page**

Argument:

I. Plaintiffs' complaints were filed prematurely. . . . . . . . . . . . . . . . . . . . . . . . 3

A. Plaintiffs' argument that the filing of the waiver forms allowed them to timely file their Second Set of Suits is incorrect as a matter of law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

B. The IRS had not "rendered a decision" on plaintiffs' refund claims before they filed their Second Set of Suits. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

C. Plaintiffs can not supplement their pleadings pursuant to RCFC 15(d) to retroactively create the jurisdiction that must exist when the suits were filed. . . . . . . . . . . . . . . . . . . . . 11

II. Plaintiffs do not address their failure to state a taking clause claim for which relief can be granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Declaration of Robert Gee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

Page

**Cases:**

*Black v. Secretary of Health and Human Services*, 93 F.3d 781 (Fed. Cir. 1996). . . . . 11,12

*Branch ex rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571 (Fed. Cir. 1995). . . . . 14

*Brandon v. Commissioner of Internal Revenue*, 2003 Tax Ct. Summary LEXIS 23 (2003). . . . . 4

*Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547 (Fed. Cir. 1991). . . . . 14

*County of Mobile v. Kimball*, 102 U.S. 691 (1880). . . . . 14

*Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000). . . . . 14

*Demes v. United States*, 52 Fed. Cl. 365 (2002). . . . . 14

*Hallstrom v. Tillamook County*, 493 U.S. 20 (1989). . . . . 12

*Harris v. United States*, 1999 WL 1001574 (D. Md. 1999). . . . . 5

*Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379 (1884). . . . . 13

*McNeil v. United States*, 508 U.S. 106 (1993). . . . . 12

*National Presto Industries, Inc. v. Dazey Corp.*, 107 F.3d 1576 (Fed. Cir. 1997). . . . . 11

*Newman-Green, Inc. v. Alfonzo-Lorrain,* 490 U.S. 826 (1989). . . . . 11

*Provenzano v. United States*, 123 F. Supp. 2d 554 (S.D. Cal. 2000). . . . . 13

**Page**

**Cases (Continued):**

*Skillo v. United States*, 68 Fed. Cl. 734 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . 14

*United States Shoe Corp. v. United States*, 296 F.3d 1378 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*W&S Distributing, Inc. v. United States*, No. 95-CV-10158-BC, 1996 WL 636119 (E.D. Mich. July 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Whittington v. United States*, 380 F. Supp. 2d 806 (S.D. Tex. 2005). . . . . . . . . . . 13

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6532. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*
§ 7463. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1746. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Miscellaneous:**

Internal Revenue Manual (I.R.M.) 4.10.8.8.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S. Rep. No. 83-1622, at 588 (1954), *reprinted in* 1954 U.S.C.C.A.N 4621, 5237-38. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rules of the Court of Federal Claims:

Rule 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rule 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,15
Rule 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Treasury Regulation (26 C.F.R.) § 301.6532. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

American Bar Association Model Rule of Professional Conduct 3.7. . . . . . . . . . . . 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-955 T and 05-954 T**
**(Consolidated on February 22, 2006)**
**(Judge Loren A. Smith)**

**UNICO SERVICES INC. and D. GORDON POTTER,**

**Plaintiffs**

**v.**

**THE UNITED STATES,**

**Defendant**

**UNITED STATES' REPLY TO PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION TO DISMISS**

In our motion to dismiss, we asked the Court to dismiss plaintiffs' suits because they were prematurely filed in violation of § 6532(a)(1), and were thus without subject matter jurisdiction. We also explained that plaintiffs' Fifth Amendment due process claims and claims challenging the imposition of penalties are not cognizable by this Court and asked that they be dismissed for lack of subject matter jurisdiction independently of § 6532. Finally, we explained that plaintiffs' Fifth Amendment takings clause claim failed to state a claim for which relief can be granted and asked that it, too, be dismissed independently under RCFC 12(b)(6).

In response, plaintiffs express disagreement only with respect to the § 6532 and

Fifth Amendment takings clause issues, and concede that this Court lacks subject matter jurisdiction over their Fifth Amendment due process claims and their claims challenging the imposition of penalties by the IRS. On the § 6532 issue, plaintiffs contend that this Court has subject matter jurisdiction over their suits because (1) they filed the relevant waiver forms prior to filing suit; (2) the IRS denied plaintiffs' refund claims to plaintiffs' counsel prior to the date they filed suit; and (3) the alleged jurisdictional defect can be cured by filing an amended complaint.[1] (Plaintiffs' Response at 4-11.) On the takings clause issue, plaintiffs assert that a takings clause claim can be made either under refund jurisdiction or the takings clause, or both. (*Id*. at 12.) We reply to each of plaintiffs' arguments below, but do not address in this reply brief the issues that plaintiffs have conceded.

[1]Plaintiffs separately filed a motion for leave to file a second amended complaint to comply with jurisdictional prerequisites on May 31, 2006. The United States will file a response to that motion separately in addition to responding to the argument raised in plaintiffs' response brief.

## ARGUMENT

## I.

## PLAINTIFFS' COMPLAINTS WERE FILED PREMATURELY

Plaintiffs' raise two arguments in support of the timeliness of their complaints, and also argue that they should be permitted to amend their complaints. We address each argument in turn.

### A. Plaintiffs' argument that the filing of the waiver forms allowed them to timely file their Second Set of Suits is incorrect as a matter of law.

Plaintiffs first argue that the filing of Forms 2297 and 3363 (*i.e.* the "waiver forms") with the IRS on or about August 24, 2005, allowed them to timely file the Second Set of Suits on August 30, 2005. (Plaintiffs' Response at 5.) In support of this argument plaintiffs assert that the "purpose behind execution of Forms 3363 and 2297 is to allow a taxpayer to file his refund suit before the final notice of disallowance is issued." (*Id.*) Plaintiffs' assertion is wrong.

First, plaintiffs' asserted purpose for the execution of the waiver forms is contradicted by the plain language of § 6532(a)(3) and by the Treasury Regulation addressing this section. Subsection (a)(3) expressed only one effect from the filing of a waiver of a notice of disallowance – that the 2-year period of limitations for filing suit shall begin on the date such waiver is filed. § 6532(a)(3). The subsection does <u>not</u> state that the filing of the waiver will have the additional effect of permitting suit to be filed before the notice of disallowance is issued. In fact, the Treasury Regulation addressing

this section confirms that subsection (a)(3) has no such effect:

> The filing of such a waiver [of notice of disallowance] prior to the expiration of 6 months from the date the claim was filed does not permit the filing of a suit for refund prior to the time specified in section 6532(a)(1) . . .

Treas. Reg. § 301.6532-1© (emphasis added); see also I.R.M. 4.10.8.8.4 (stating that filing of waiver of notice of disallowance does not affect the six-month waiting period required by § 6532(a)(1) before filing a refund suit).

Second, plaintiffs do not cite any legislative history to support their claimed "purpose" of the waiver forms. Our review of the legislative history of § 6532 has yielded no indication that Congress intended that the execution of waivers would eliminate the six-month waiting period in § 6532(a)(1) and authorize a taxpayer to immediately file suit. In fact, the Senate Finance Committee report states only the following with respect to the notice of disallowance provision:

> Paragraph (3) of subsection (a) contains a new provision which states that if a taxpayer files a written waiver of the requirement that he be sent a notice of disallowance of his claim for refund, then the 2-year period for filing suit for such refund begins to run on the date such waiver is filed.

S. REP. NO. 83-1622, at 588 (1954), *reprinted in* 1954 U.S.C.C.A.N. 4621, 5237-38. The Senate Finance Committee expressed no link between waivers and the six-month waiting period. *Id*.

Plaintiffs' argue that *Brandon v. Commissioner of Internal Revenue*, 2003 Tax Ct. Summary LEXIS 34 (2003), supports their argument that the filing of waiver forms

allowed them to file their Second Set of Suits prior to the expiration of the six-month waiting period. The most fundamental problem with plaintiffs' reliance on *Brandon* is that the case was filed by the taxpayer under the Tax Court's "small" case procedures (*i.e.* less than $50,000) and, thus, under § 7463(b), the decision "shall not be treated as a precedent for any other case." In any event, the statement cited by plaintiffs – "Petitioners signing of Forms 3363 and 2297 served only to accelerate the running of the period of limitations on, as well as the first permissible date for filing a suit for, the claimed credit for overpayment" – conflicts with the plain language of § 6532(a)(3), the Treasury Regulation addressing that subsection, the Internal Revenue Manual provision addressing this issue, and precedential case law. *See Harris v. United States*, 1999 WL 1001574, *1 (D. Md. 1999) (rejecting plaintiffs' claim that they should not be required to wait six months before filing suit because they filed a waiver of notification of disallowance). Accordingly, the *Brandon* decision provides no support for plaintiffs' position.

**B. The IRS had not "rendered a decision" on plaintiffs' refund claims before they filed their Second Set of Suits.**

Plaintiffs argue that their suits were timely filed because communication between plaintiffs' counsel and the IRS revealed that the IRS had by then "rendered a decision" on their refund claims. (Plaintiffs' Response at 6-7.) According to plaintiffs, IRS team manager Robert Gee communicated the IRS's decision to disallow plaintiffs' refund claims to plaintiffs' counsel in an August 18, 2005 letter, and in a telephone conversation

on the same date. Plaintiffs' characterization of the written and oral communication between plaintiffs' counsel and the IRS is incorrect.

The letter Mr. Gee faxed to plaintiffs' counsel on August 18, 2005, does not communicate that the IRS had made a final decision to disallow the refund claims submitted by plaintiffs. In fact, to the contrary, the letter states that: "before I sign off on everything, I have some additional questions that require your explanation." (Plaintiffs' Exhibit 1.) After explaining that Mr. Potter had requested a refund in three different amounts, the letter poses the following question:

> Is your request for refund in the amount of $358,054, $431,631, or $430,544? The amount of $431,631 shown on the face of your amended return and the amount of $430,544 shown on the last page indicate to me that you are essentially asking for a refund of **ALL** taxes paid in 1998. This means to me that you are reversing all income and expenses reported and bringing the tax to zero. In reviewing the narrative attached to your amended return, there is no mention of why such a position is being taken.

(*Id.*) (emphasis in original.) The letter poses an additional question about a citation included in the amended returns. (*Id.*) Thus, Mr. Gee's letter was not a final, unambiguous denial of a refund claim. Instead, it posed questions to plaintiffs' counsel – including a fundamental question about the correct amount of Mr. Potter's refund claim.

The next formal communications from the IRS following the August 18, 2005 letter from Robert Gee were the proposed notices of disallowance dated August 22 and 24, 2005. (Defendant's Exhibits 15 and 16.) In these preliminary notices, the IRS proposed full disallowance of plaintiffs' refund claims, and invited plaintiffs to engage in

further dialogue with the IRS with respect to the refund claims. (*Id*.) It was not until one month later, on September 22 and 27, 2005, that the IRS issued final notices of disallowance, in which the IRS unambiguously stated that it had made a final decision to disallow plaintiffs' refund claims. (Defendant's Exhibits 19 and 20.) Accordingly, the IRS had not "rendered a decision" within the meaning of § 6532(a)(1) prior to September, 2005, when the final notices of disallowance were issued – nearly thirty days after plaintiffs' filed their Second Set of Suits.

Plaintiffs' assertion regarding the oral communication between plaintiffs' counsel Robert Stientjes and IRS employee Robert Gee is unsubstantiated and refuted. The purported affidavit by counsel of record in this case claims that Mr. Stientjes had a conversation with Mr. Gee on or about August 18, 2005, during which call Mr. Stientjes answered the questions raised in Mr. Gee's August 18, 2005 letter, and Mr. Gee "verbally communicated . . . his decision to deny both D. Gordon Potter and Unico Services, Inc.'s Claims for refund." (Aff. of Robert J. Stientjes in Support of Plaintiffs' Reply to Defendant's Motion to Dismiss at ¶ 4.)

As a preliminary matter, since Mr. Stientjes' failed to sign his affidavit, and has not cured that defect since defendant's counsel brought the matter to his attention, the Court should strike it.[2] *See* RCFC 11(a) ("An unsigned paper shall be stricken unless the

---

[2]Defendant's trial attorney attempted to contact Mr. Stientjes on June 7, 2006, regarding the unsigned affidavit. Mr. Stientjes was not available, but defendant's trial attorney left a voice message advising Mr. Stientjes that his affidavit was not signed. To

omission is corrected promptly after being called to the attention of the attorney or party."); *see also* 28 U.S.C. § 1746 (providing that any matter that can be proven by sworn statement, may be proven by a written statement "which is subscribed by him, as true under penalty of perjury, and dated" in the form provided).

In addition, Mr. Stientjes can not act as both counsel of record and a fact witness. By submitting an affidavit (albeit unsigned) in which Mr. Stientjes provides testimony on an important factual issue with respect to the Court's subject matter jurisdiction, he is attempting to act as a witness. It is, however, generally inappropriate to simultaneously act as both counsel and a witness. *See* American Bar Association Model Rule of Professional Conduct 3.7 ("A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness . . . ."). As explained in Comment [2] to Model Rule 3.7, a "witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others." In his unsigned affidavit, Mr. Stientjes clearly testifies on the basis of his purported personal knowledge, rather than commenting on evidence provided by others. And then, in his papers on plaintiffs' behalf, he makes arguments regarding the effect of the facts to which he testified. Quite simply, Mr. Stientjes can not do both.

Moreover, Mr. Gee refutes Mr. Stientjes' assertions and offers more than just his memory to demonstrate that he did not have a conversation of any kind with Mr. Stientjes

---

date, defendant has not received a signed version of the affidavit.

on August 18, 2005. In his signed Declaration, Mr. Gee states that, based on his records, correspondence, and documentation, as well as his memory, he does not believe that the August 18, 2005 conversation alleged by Mr. Stientjes took place. (Gee Affidavit at ¶ 7.) Mr. Gee explains that he had a habit of documenting every communication he had with Mr. Stientjes, and that if the conversation had occurred, it would have been documented in his files. (*Id*. at ¶¶ 5, 7.) In addition, Mr. Gee explains that Mr. Stientjes answered the question about the amount of Mr. Potter's refund claim in an Email dated August 21, 2005, and that he had no communication with Mr. Stientjes between August 18, 2005, when he sent a fax to Mr. Stientjes posing certain questions, and August 21, 2005, when he received Mr. Stientjes' response via Email. (*Id.* at ¶ 9.) With the exception of the Email communication from Mr. Stientjes on August 21, 2005, and the issuance of the proposed notices of disallowance on August 23 and 24, 2005, Mr. Gee does not recall any other communications with Mr. Stientjes between August 18, 2005 and August 31, 2005, the date when plaintiffs filed their Second Set of Suits. (*Id.* at ¶ 11.)

While Mr. Gee does not believe that he had a conversation with Mr. Stientjes on August 18, 2005, he does recall two earlier conversations with Mr. Stientjes during which they discussed plaintiffs' refund claims. (*Id*. at ¶¶ 12-14.) During a July 18, 2005, telephone conversation, Mr. Stientjes requested immediate disallowance of plaintiffs' refund claims. (*Id.* at ¶ 12.) Mr. Gee explained to Mr. Stientjes that he would have to review IRS internal procedures regarding immediate disallowance, and would discuss the

matter with him again. (*Id.*) On July 21, 2005, Mr. Stientjes left Mr. Gee a message inquiring about the status of the claims disallowance. (*Id*. at ¶ 13.) The next day, Mr. Gee spoke with Mr. Stientjes again, and explained that the notices of disallowance could not yet be issued because certain required steps remained to be taken by the IRS. (*Id*. at ¶ 14.) Mr. Gee did not state during any of these conversations that the IRS had disallowed plaintiffs' refund claims. In fact, several weeks after the July 22, 2005, telephone conversation, Mr. Gee sent Mr. Stientjes a letter by fax, posing a questions about the amount of Mr. Potter's refund claim. (*Id*. at ¶ 8.) Based on these communications and the proposed notices of disallowance issued on August 23 and 24, 2005, it is clear that the IRS had not "rendered a decision" on plaintiffs' refund claims prior to the August 30, 2005 filing of the Second Set of Suits.

This case, then, is distinguishable from the case relied upon by plaintiffs, *W&S Distributing, Inc. v. United States*, No. 95-CV-10158-BC, 1996 WL 636119 (E.D. Mich. 1996). In *W&S Distributing*, an IRS agent made a statement during a telephone conversation with the taxpayer's representative that the taxpayer's refund claim was disallowed on a certain date, and the court found that the taxpayer "had no reason to think that the government would relent and grant its claim for refund." *Id*. at *7. Here, on the other hand, there was no communication by an IRS employee that plaintiffs' refund claims were disallowed until the final notices of disallowance were issued in September, 2005, several weeks after plaintiffs' Second Set of Suits had been filed.

**C. Plaintiffs can not supplement their pleadings pursuant to RCFC 15(d) to retroactively create the jurisdiction that must exist when the suits were filed.**

Finally, plaintiffs claim that the jurisdictional defect in this case can be cured by filing an amended or supplemental complaint pursuant to RCFC 15(d). (Plaintiffs' Response at 7-9.)

RCFC 15(d) states, in pertinent part:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense.

The general rule is that federal court jurisdiction is time-specific in that it depends on the facts as they existed when a complaint was filed, *see Newman-Green, Inc. v. Alfonzo-Lorrain*, 490 U.S. 826, 830 (1989); *National Presto Industries, Inc. v. Dazey Corp.*, 107 F.3d 1576, 1582 (Fed. Cir. 1997); some jurisdictional defects, however, can be cured by filing a supplemental pleading under RCFC 15(d) "in appropriate circumstances." *Black v. Secretary of Health and Human Svcs.*, 93 F.3d 781, 790 (Fed. Cir. 1996). The Federal Circuit has explained that whether a supplemental pleading "can be used to rescue an insufficient petition or complaint in a particular case depends on a careful reading of the substantive provision at issue." *Id.*

The Federal Circuit has made it clear that the filing of a suit before the expiration of a statutory waiting period is not an appropriate circumstance:

> If the statute in question contains, for example, an express prohibition against filing a complaint before the expiration of a statutory waiting period, it would defeat the purpose of the statutory prohibit to permit a plaintiff to ignore the waiting period, file his complaint during the waiting period, and then seek to cure the defect by filing a supplemental pleading alleging that the waiting period expired during the pendency of the action.

*Black*, 93 F.3d at 790; *see also McNeil v. United States*, 508 U.S. 106, 111-13 (1993) (since the statute at issue contained an express prohibition against filing suit prior to the expiration of a waiting period, complaint filed during the prohibited period had to be dismissed rather than permitted to go forward, even though the waiting period had expired while the complaint was pending); *Hallstrom v. Tillamook County*, 493 U.S. 20, 32-33 (1989) (same). Accordingly, it is well-settled that a supplemental pleading can not cure a jurisdictional defect when the statute at issue contains an express prohibition against filing a complaint before the expiration of a statutory waiting period.

Here, the statute at issue, § 6532(a)(1), is an express prohibition against filing a refund suit before the expiration of a six-month waiting period unless the IRS renders a decision on taxpayer's refund claim prior to the expiration of the six months. Plaintiffs unquestionably filed suit prior to the expiration of the six-month waiting period. As explained in our opening brief and in section I.B., *supra*, the IRS did not render a decision prior to the date plaintiffs filed suit. The Court can not permit plaintiffs to supplement their pleadings to allege that the IRS rendered a decision in September, 2005, after the suits were filed, or to allege that the six-month waiting period has now expired.

To do so would render the statutory prohibition meaningless and permit any plaintiff to ignore it and then file an amended pleading.[3]

Plaintiffs stridently argue that, by raising this jurisdictional issue, the United States "is trying to achieve only one purpose to create delays that would waste the time and resources of the Court and the litigants, by wasting time, and ignoring the doctrine of judicial economy." (Plaintiffs' Response at 9.) Plaintiffs' accusation is insulting and unfounded. In fact, the United States has raised an important and valid concern with respect to this Court's subject matter jurisdiction – a fundamental prerequisite to the exercise of judicial power. *See Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). Indeed, counsel for the United States would have been remiss in its duties to its client and the Court if it had failed to raise this jurisdictional defect at this early stage of litigation, prior to discovery and trial. If plaintiffs' counsel's concern regarding the Court's and the parties' resources is legitimate, it should recognize the simple truth that

[3]Plaintiffs mis-cite *Whittington v. United States*, 380 F. Supp. 2d 806 (S.D. Tex. 2005), and *Provenzano v. United States*, 123 F. Supp. 2d 554 (S.D. Cal. 2000), for the proposition that the Court should grant plaintiffs leave to supplement their complaints to allege events to vest this Court with jurisdiction and not dismiss their complaints. Neither case stands for such a proposition. In both cases, the court concluded that it lacked subject matter jurisdiction, because the plaintiffs failed to comply with the six-month waiting period in § 6532(a)(1), and therefore dismissed the complaints without prejudice and allowed the plaintiffs thirty days leave within which to file an amended complaint that reflected statutory compliance. *Whittington* 380 F. Supp. 2d at 813-14; *Provenzano*, 123 F. Supp. 2d at 558-59. The result should be the same here; the Court should dismiss plaintiffs complaints without prejudice to refiling amended complaints asserting the required jurisdictional facts.

the suits were filed too early, voluntarily dismiss them, and simply file new suits, which plaintiffs can do in accordance with § 6532.

## II.

## PLAINTIFFS DO NOT ADDRESS THEIR FAILURE TO STATE A TAKINGS CLAUSE CLAIM FOR WHICH RELIEF CAN BE GRANTED

Plaintiffs argue that a takings clause claim can be made either under "refund jurisdiction or the takings clause or both," citing *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000), and *Broughton Lumber Co. v. Yeutter*, 939 F.2d 1547 (Fed. Cir. 1991). (Plaintiffs' Response at 12.) Plaintiffs' argument and citation to these two decisions relate only to the issue of this Court's jurisdiction over a Fifth Amendment takings clause claim. Defendant agrees that this Court can have jurisdiction over a takings clause claim. (*See* Defendant's Opening Brief at 18.)

Plaintiffs' jurisdictional focus fails to address the issue raised in defendant's opening brief – that is, that plaintiffs have failed to state a takings clause claim for which relief can be granted. (*Id*. at 17-18.) Plaintiffs ignore the well-settled principle that the imposition and collection of tax is "not 'the taking of private property for public use in the sense of the constitution'." *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002) (quoting *County of Mobile v. Kimball*, 102 U.S. 691, 703 (1880)); *see also United States Shoe Corp. v. United States*, 296 F.3d 1378, 1383 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 1056 (2003); *Branch ex rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571, 1576-77 (Fed. Cir. 1995), *cert. denied*, 519 U.S. 810 (1996); *Skillo v. United States*, 68 Fed. Cl.

734, 743 (2005). They also fail to address our assertion that the "taking" they have alleged is the IRS's collection of taxes. (*See* Defendant's Opening Brief at 18.) In fact, they seem to concede this point by asserting that a "claim for tax relief" can be brought under the takings clause. (Plaintiffs' Response at 12.) Because the government's lawful exercise of its power to collect taxes does not give rise to a takings clause claim – and because plaintiffs have failed to even address this argument – plaintiffs' takings clause claims must be dismissed pursuant to RCFC 12(b)(6).

## CONCLUSION

Plaintiffs' complaints were filed prematurely in violation of § 6532(a)(1), thus depriving this Court of subject matter jurisdiction. The United States therefore requests that this Court dismiss plaintiffs' complaints without prejudice pursuant to RCFC 12(b)(1) and enter judgment for the United States. The United States also requests that the Court dismiss plaintiffs' Fifth Amendment due process claims and penalty claims for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), which plaintiffs evidently concede. Finally, the United States requests that the Court dismiss plaintiffs' Fifth Amendment takings clause claims for failure to state a claim for which relief can be granted pursuant to RCFC 12(b)(6), since the imposition and collection of tax is not a "taking."

Respectfully submitted,

s/Jennifer P. Wilson
JENNIFER P. WILSON
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6495
FAX (202) 514-9440
jennifer.p.wilson@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

s/Steven I. Frahm
Of Counsel

June 14, 2006